## WILLIAM PATTEN & *ux. versus* JAMES C. TALLMAN.

In the trial of an action at law, if a will be offered in evidence, to show title to real estate under it, which appears by the record of the probate court to have been duly proved, approved and allowed in that court, it may still be treated as wholly inoperative, if the judge of probate, who approved and allowed such will, had not jurisdiction of it.

If it was otherwise a matter within the jurisdiction of the judge of probate, to decide upon the probate of a particular will, the mere fact that he had attested it as one of the three subscribing witnesses thereto, does not deprive him of that jurisdiction.

If a will has been duly approved and allowed by a probate court, having jurisdiction, its validity cannot be called in question by a court of common law. Such adjudication of the court of probate, not vacated by an appeal, is final and conclusive upon all persons. And whether the court of probate decided any questions, necessarily arising and involved in its adjudication, correctly or incorrectly, can never be made a matter of inquiry and decision in a common law court, to affect that adjudication.

The competency of an attesting witness to a will is not to be determined upon the state of facts existing at the time when the will is presented for probate, but upon those existing at the time of the attestation.

If it be impossible, upon legal principles, to present the testimony of one of the three attesting witnesses to a will, it may be approved without his testimony.

If one of the three attesting witnesses to a will be otherwise a competent witness, he is not rendered incompetent, because he was, at the time o its attestation and at the time of its approval and allowance, judge of pro bate for that county.

Patten *v.* Tallman.

Where the testator provided in his will, that if his two sons J. and H. or either of them, should, after his decease, become surety for any person or persons, " they shall in such case forfeit all bequests, legacies and devises given them in this will ;" and where afterwards, by a codicil to the same will, the testator devised " to my son H. in trust for my son J. during the natural life of the said J., the Gardiner's neck farm ;" — *it was held,* that the estate, so devised in trust, was not forfeited, if J. and H. had become sureties for others.

THIS was a writ of entry wherein the demandants, in right of the wife, claim an undivided seventh part of certain lands in Woolwich, as one of the heirs at law of Peleg Tallman, deceased.

It was admitted that Peleg Tallman was seized of the demanded premises at the time of his decease, and that Mrs. Patten was one of the seven children, heirs at law of said deceased; and also, that James C. Tallman was in the occupation of the premises at the time the action was commenced. Peleg Tallman died in March, 1841, and the tenant claimed under the will of the deceased.

The tenant then offered in evidence, an instrument as the last will and testament of said deceased, with a copy of the record, whereby it appeared that after notice to all interested, the will was duly proved and allowed under the hand and seal of Nathaniel Groton, judge of probate, on March 29, 1841. The decree states, that "whereas it is proved to me by the testimony of Nathaniel Groton, William Rouse and James Rouse, being the three subscribing witnesses thereto, that the said instrument was signed, sealed and published by the said Peleg Tallman, as his last will and testament," &c.

To the admission of this instrument, as the last will of Peleg Tallman, the demandants objected, when offered at the trial of this action, on the grounds, that the will was not legally executed, because Nathaniel Groton, one of the attesting witnesses to the will, at the time his signature was affixed as a witness, was judge of probate for the county of Lincoln, in which county the deceased lived at that time and until his death. And because the said Nathaniel Groton had no jurisdiction, and could not legally act in the probate of said will,

Patten *v.* Tallman.

being one of the attesting witnesses. It was admitted that the same Nathaniel Groton drew the will, attested it as a witness, and approved and allowed the same as judge of probate. And objected because said Groton was not legally sworn as a witness when the will was admitted to probate.

At the trial, before WHITMAN C. J., the demandants further offered to prove, " that James C. Tallman had forfeited his life estate in the demanded premises, by breach of the conditions under which the same was devised to him, under and by virtue of such will, by becoming bondsman and surety for other persons, contrary to the twentieth item of said will. And further offered to prove, that said Henry Tallman had forfeited all estate he might have in the demanded premises by breach of the conditions of the instrument on which he was to take and hold what was or might be devised to him, by becoming bondsman and surety for other and divers persons, contrary to the twentieth item of said will, if it was ever legally executed and approved and allowed."

The evidence offered was rejected. Other questions were made at the trial, not considered by the Court in the decision.

A nonsuit, default, or new trial was to be ordered, as in the opinion of the Court, the law applicable to the questions presented, should require.

By the codicil to the last will of Peleg Tallman, there was this devise of the demanded premises. " I give and devise to my son, Henry Tallman, in trust, and for my son, James C. Tallman, during the natural life of the said James, the Gardiner's neck farm in Woolwich." The reversion of the Gardiner's neck farm was given to others, Henry Tallman not being one of them. By the twenty-second and last clause in the will, Henry Tallman was made " sole legatee and devisee of all my estate not devised in this my last will and testament." The twentieth item in the will was in these terms : — " 20th. The bequests, devises and gifts I have made to my two sons, James and Henry, are made to them on condition and expressly, that they, nor either of them, at any time become bondsmen or sureties for any person or persons whatever after my decease ;

and in case they or either of them should do so, they shall in such case forfeit all bequests, legacies and devises, given them in this my will."

The case was argued by

*S. Fessenden* and *W. P. Fessenden,* for the demandants — and by *H. Tallman* and *M. H. Smith,* for the tenant.

For the demandants it was contended, that the paper writing, called the will of Peleg Tallman, was not attested and subscribed in the presence of said Peleg Tallman by three credible witnesses, and is therefore void — not voidable, but void, a mere nullity.

The language of the statutes, stat. 1821, c. 38, § 2, Rev. Stat. c. 92, § 2, is strong and decisive on this point — " shall be attested and subscribed in the presence of the testator by three credible witnesses, or the same shall be utterly void." By credible witnesses, in the sense of the statute, is intended competent witnesses. *Amory* v. *Fellows,* 5 Mass. R. 219; *Hawes* v. *Humphrey,* 9 Pick. 350; 1 Day, 35; 1 Ld. Raym. 505; 2 Strange, 1253.

The legislature could never have contemplated, that the judge of probate, having such an important jurisdiction in relation to the estates of deceased persons, and who must necessarily be called on to adjudicate in the most delicate as well as important questions in the discharge of his official duty, should take the place of counsel, scrivener, adviser and witness in drafting and attesting the execution of a will, which might, and in all probability would come before him for his adjudication thereon. He could not be an impartial judge upon the questions, which would necessarily come before him.

The sanity of a testator at the time of executing the will is not by law to be presumed, but must be proved. *Gerrish* v. *Nason,* 22 Maine R. 438. And such proof must be by witnesses competent at the time of the attestation. No change afterwards can operate to make the witness competent, if he is not so at the time. Phill. Ev. 374; Willes, 665; 1 Ld. Raym. 505; 2 Strange, 1253; 5 Mass. R. 219; 12 Mass. R. 358; 2 Root, 303; 2 Greenl. Ev. § 691.

There are many things which render a person incompetent to testify, and therefore incompetent to attest the execution of a will. One class of cases arises out of an interest in the question in the proposed witness. Another class of cases where the witness will be incompetent is, where, from motives of public policy, the law makes the witness incompetent. Within this class of cases is that of husband and wife, who cannot testify for or against each other. 1 Greenl. Ev. § 236, 254, 364, 408. It is laid down in section 364, that the same person cannot be both witness and judge in the same case. If he sits as judge he cannot be sworn as a witness. It is directly against the policy of the law, that the judge of probate should be a competent witness to the execution of a will, the probate of which, should the testator die while he is judge, must come before him. The same person, in this case, acts as counsel in drawing up and advising as to the will, attests it as a witness, acts as a witness to sustain his own doings, testifying before himself to the facts necessary to sustain the will, and approving it as judge of probate. The legislature of this State has clearly indicated in their view, the gross impropriety of such course. Rev. Stat. c. 105, § 20.

If Judge Groton were not a competent witness to that will, then it was utterly void, and being so, the judge of probate had no jurisdiction to approve it, and his proceedings are void. *Griffith* v. *Frazier*, 8 Cranch, 9 ; *Smith* v. *Rice*, 11 Mass. R. 507 ; *Sumner* v. *Parker*, 8 Mass. R. 83 ; *Wales* v. *Willard*, 2 Mass. R. 120 ; *Hunt* v. *Hapgood*, 4 Mass. R. 117 ; 2 Greenl. Ev. § 672.

The case of *Dublin* v. *Chadbourne*, 16 Mass. R. 433, does not conflict with our position. It is said in the opinion, that if it can be shown, that the probate was a mere nullity, it would undoubtedly be fatal to the title of the devisees. A case may be cited from 1 Root, 462, adverse to us. It is not supported by argument or authority, and appears to have been given at the moment without consideration. Another case from 2 Root is of the same character, and rests solely on the first. Much stronger authority is wanted to sustain such a proceeding.

But if Groton were a competent witness, he was not competent to sit as a judge to decide on his own testimony. All the witnesses should be summoned and examined, if living. 1 Wilson, 216; 3 Dallas, 386.

As there was no lawful will, lawfully proved of Peleg Tallman, who died seised of the demanded premises, the demandants are entitled to recover, as Mrs. Patten is admitted to be his daughter.

It was also contended, that unless the demandants were precluded, by their omission to make an entry, from taking advantage of the forfeiture on that ground, that if the will was to be considered as established, still they were entitled to recover on the ground, that both the tenant and the residuary devisee had forfeited the estate by having violated the provisions of the twentieth item in the will.

*For the tenant,* it was replied, that this will was duly proved and allowed; and by statute c. 92, § 25, " the probate of such will shall be conclusive, as to the due execution thereof." *Tompkins* v. *Tompkins,* 1 Story, 547, and cases there cited. In all cases in which the judge of probate has jurisdiction, his decree is final and conclusive, unless appealed from, or unless fraud is proved. In this case there was no appeal, and it is not pretended that there was fraud. 1 Daniel's Ch. Pl. & Pr. 23, note 2, and Vol. 2, 1019, note 1; *Osgood* v. *Breed,* 12 Mass. R. 525, 534; *Laughton* v. *Atkins,* 1 Pick. 535, 549; *Dublin* v. *Chadbourne,* 16 Mass. R. 433, 441; 1 Day, 170; 1 Conn. R. 476; 3 Day, 318; 8 N. H. R. 124; 8 Ohio R. 239; 3 Binney, 498; 5 S. & R. 22.

The judge of probate had jurisdiction of this case. By stat. c. 105, § 3, he has jurisdiction of " the estates of all persons deceased, who were, at the time of their decease, inhabitants of, or resident in the same county," with certain exceptions, which the demandants do not contend exist in the present case. The testator, as the case finds, was an inhabitant of, and resident in the county of Lincoln, at the time of his decease.

We coincide with the counsel for the demandants, that the

word *credible*, in the statute, has the same meaning as *competent*, and shall so speak of it.

The same statute provides, that if the witness was competent at the time of the attestation, no subsequent incompetency can affect the question. Having been duly attested, the will may be proved without all, and even without any of the subscribing witnesses. And so are the decisions. At the time of attestation, Mr. Groton was a competent witness, unless the mere fact of his being then judge of probate rendered him otherwise. There was no certainty, or even probability, that this witness would be the judge of probate to decide upon the validity of the will. He might cease to be judge of probate, in various modes, or the testator might remove out of the state or out of the county ; or the witness might have deceased first. Neither reason nor law disqualifies a judge of probate from attesting a will. We have not found, that this question has ever been before the courts, excepting in the state of Connecticut, where it has been twice decided, under a similar statute, that a judge of probate is a competent witness to a will. 1 Root, 462 ; 2 Root, 232. It is said, that the judge of probate cannot swear himself, and therefore it is insisted that he was an incompetent witness. The will might be proved by the testimony of the other witnesses, or if the heirs were dissatisfied, they might appeal, and then all the witnesses would be competent. It was decided, before the separation of this State from Massachusetts, that because a witness to a will was incompetent to testify at the trial, that he was not thereby rendered an incompetent witness to the will. *Sears* v. *Dillingham*, 12 Mass. R. 359. It is enough, that he was competent at the time of attestation.

The heirs at law were not only duly notified, but were all actually present at the probate of the will ; and as the witnesses were competent, and the judge of probate had jurisdiction, if there was any error in his mode of proceeding, the remedy was by appeal, and in that mode only.

It was contended, that the *cestui trust* could not create a forfeiture of the estate designed for his benefit. The very

object of placing it in trust was to prevent his wasting or destroying it. *Russel* v. *Lewis,* 2 Pick. 510. Nor can a forfeiture of such estate be created by any act in contravention of the provisions of the twentieth item of the will on the part of the trustee. The trust estate is not liable for the payment of the debts of the trustee ; and it could not have been the intention of the testator, that the trustee should have the power at his pleasure to deprive another of the benefit intended for him by the will. If the counsel for the demandants are right, the effect of such act of the trustee would be, to deprive the *cestui que trust,* of the estate intended by the testator for his benefit, and transfer a portion of it to the trustee himself, in his own right, as one of the heirs at law.

Several other grounds of defence were strenuously urged, but as the decision was made without taking them into consideration, it becomes unnecessary to state them.

The opinion of the Court was drawn up by

SHEPLEY J. — The demandants have commenced this action in right of the wife to recover one undivided seventh part of the Gardiner neck farm in the town of Woolwich, owned by the late Peleg Tallman at the time of his decease. The wife of the demandant, being a daughter of the deceased, claims title as one of his heirs at law. The tenant presents a title by devise, made in the last will of his deceased father, to a trustee, for his benefit during his natural life. To prove such title he offered that will, as duly proved and allowed in the probate court for the county of Lincoln. Its admission as evidence was objected to on the ground, that it had not been legally executed, or legally proved and allowed. The facts, upon which these objections rest, were admitted, to wit, that Nathaniel Groton, one of the three attesting witnesses to the will, was at the time of its attestation, and at the time of its approval and allowance, judge of probate for that county.

The question thus presented is not a new one. It has been twice decided in the State of Connecticut, in the cases of *McLean et ux.* v. *Barnard,* 1 Root, 462, and Ford's case,

2 Root, 232. Those cases were presented on appeals from the probate court, and the wills were approved, but the reasons were not stated.

The question is differently presented here in an action at law, in which it is contended, that the will is wholly inoperative. It may be so treated, if the judge of probate, who approved and allowed it, had not jurisdiction of it.

By the statutes in force at the time, the judges of probate in their respective counties were authorized to take the probate of wills of persons deceased, who were resident in the same county with the judge, at the time of their decease, unless he was interested as heir, legatee, creditor, or debtor, to an amount exceeding one hundred dollars, or within the degree of kindred, by which he might possibly be an heir to the estate of the deceased person. Stat. 1821, c. 51, § 1, 2; Stat. 1822, c. 198. The residence of the testator at the time of his decease was in the county of Lincoln, in which Nathaniel Groton was the judge of probate. There is no proof, that the judge was in any manner interested, or that he could possibly be an heir to the estate. It was clearly a matter within his jurisdiction to decide upon the probate of the will, unless the mere fact, that he had attested it, as one of the subscribing witnesses, deprived him of that jurisdiction. The executors and devisees, as well as the heirs at law, were entitled to have the effect of such an attestation determined by some competent tribunal. In no other county could the probate court entertain jurisdiction, for the deceased had no residence or domicile in any other county; and the judge of probate in the county of his domicile was not so situated as to give any other judge of probate jurisdiction. This court has only an appellate jurisdiction in such cases. Admitting the entire incompatibility of his position to testify as a witness and to receive and act upon that testimony as a judge, that would not deprive him of the jurisdiction, which the law imposed, and which his office required him to exercise. It would only require him to decide, whether he could legally testify, and whether the will could be proved, either with or without his testimony; in other words,

to decide upon the effect of his own act in attesting the will, while he held that office. It is undesirable, that a judge should be so situated as to be required to decide upon the legal effect of his former acts; but judges are not very unfrequently, in the discharge of their official duties, compelled to do so. A person may become an attesting witness to a will and afterward be appointed judge of probate in the county, where that testator resided at the time of his death, and thus it may become his duty to decide, whether the will can be proved by the testimony of the other two witnesses, and what shall be the effect of his former act of attestation. The jurisdiction in such case could not be doubted. This case differs from the one supposed, in the fact, that the attesting witness held the office of judge at the time of such attestation, and it therefore raises a question of more delicacy and difficulty; but the jurisdiction, or the obligation to decide it, cannot be affected by its greater difficulty or more important influence. Any error, which might be supposed to arise out of the former act and the bias occasioned by it, could be corrected by an appeal to the supreme court of probate. A case might be presented in a court of common law involving a similar embarrassment. A deed, bond, or other instrument may have been attested solely by the judge presiding at the trial of a cause, in which it becomes material to prove its execution. No one would conclude, that he had not jurisdiction of the cause, merely because he could not try it, and also testify as a witness in it. The conclusion is unavoidable, that the mere fact, that a judge cannot testify in a cause, in which his testimony may be essential to enable a party to prevail, cannot deprive him of its jurisdiction. Admitting then that judge Groton could not testify as a witness, when the will was presented before him for probate; and assuming for the present, that he was not a competent witness to the will, he would not thereby be deprived of his jurisdiction of the case. Nor could he be excused from taking cognizance of it. Coming to such conclusions, he must have decided, that the will was not duly executed. But however he might have decid-

ed the questions presented, the rights of all parties could have been preserved and secured by an appeal.

If judge Groton had jurisdiction of the probate of this will, the question next arises respecting the effect of its exercise. The original jurisdiction for the probate of wills is by statute vested exclusively in the courts of probate. The courts of common law have no jurisdiction, or right to determine, whether a will has been legally executed or not. If a will be presented to them as a muniment of title, which has not been proved and allowed by a probate court, it cannot be received and proved, nor its validity be admitted. If it has been approved and allowed by a probate court, having jurisdiction, its validity cannot be called in question by the court of common law. The adjudication of the court of probate, not vacated by an appeal, is final and conclusive upon all persons. Whether the court of probate decided any questions necessarily arising and involved in its adjudication correctly or incorrectly, can never be made a matter of inquiry and decision in a common law court, to affect that adjudication. Such have been the settled doctrines for a long time in this and in several of the other United States. *Dublin* v. *Chadbourne,* 16 Mass. R. 433 ; *Laughton* v. *Atkins,* 1 Pick. 535. The court of probate must necessarily have decided in this case upon the competency of the witnesses to the will; and that decision must be conclusive, as decided in the case of *Dublin* v. *Chadbourne.*

This case might therefore be decided without the expression of any opinion, whether Nathaniel Groton was a competent witness to the will. As the question may, perhaps, be presented in another form, and as the parties may be better satisfied, and are very desirous that the question should be finally determined, it has been thought best to express an opinion upon it.

The objection made to his competency is, that he could not be a witness to prove the will, and at the same time a judge to decide upon its legal execution. The competency of an attesting witness is not to be determined upon the state of facts existing at the time, when the will is presented for probate, but upon those existing at the time of the attestation. The inca-

pacity of the witness to testify, when the will is presented for probate, is no certain or satisfactory proof of his incompetency at the time of attestation. At the time of the attestation it was a matter of contingency and of uncertainty whether Mr. Groton would be incapable of testifying before the competent tribunal, when the will was presented for probate. The term of office, for which he was appointed, might have terminated before the decease of the testator. The domicile of the testator at the time of his decease might have been in another county or state. So if the testator had survived Mr. Groton, the present objection could not have been made. The incapacity of the witness to testify was not, at the time of attestation, a general incapacity existing in all places and before all tribunals alike. He might have testified in any other county or state, and before this court as the appellate tribunal, in relation to the execution of the will. His incapacity to testify was limited to the single contingency, that he should continue to be the judge of probate in the county in which the testator should have been domiciled at the time of his death. That which renders a person incompetent as a witness to testify in a particular case, is something, with which he is connected, or to which he is attached, rendering him at the same time alike incompetent under all circumstances not removing it, and before all tribunals administering the same law. There was an incapacity to testify, when the will was presented before the witness to be acted upon by him as judge; and so there would have been, if it had been attested by him before he was appointed to that office. There was nothing, so far as this objection extends, essentially and necessarily illegal or defective in the attestation and execution of the will at the time, for it might, under different circumstances, and before different tribunals, have been established by the testimony of all the attesting witnesses. When it was presented for probate, if the judge had decided, that he was an incompetent witness, merely because he could not testify in his own court, and that the will was not duly executed; and the same question had been presented to the supreme court of probate by an appeal, the objection, that one

of the witnesses could not testify on account of his official position, could not have been made. Nor could it have been, if presented on an appeal from a decision of the judge of probate, that the will might be legally proved by the two other attesting witnesses, as in cases, where one of the witnesses has since the attestation become incompetent or insane. The objection does not reach beyond the incapacity of the witness to testify, when the will was presented for probate before himself; and if the heirs at law had opposed its probate in that court, and it had been presented for probate, in the appellate court, by an appeal from a decision, either favorable or unfavorable to them, Mr. Groton must have been regarded as a competent witness, and the will must have been approved and allowed. If Mr. Groton, as the record exhibited, shows, presented his own testimony in his own court and decided upon it, instead of concluding, that he could not legally testify there, and that the will might therefore be proved by the testimony of the two other witnesses, should their testimony prove the necessary facts, it is not perceived, that the heirs at law have been injured by their neglect to contest the probate of the will at the proper time and place. The rule of law, which requires, that the testimony of the three subscribing witnesses to a will should be introduced to prove it, has its exceptions. If it be impossible upon legal principles to present the testimony of one of them, the will may be proved without it. *Chase* v. *Lincoln,* 3 Mass. R. 236. *Sears* v. *Dillingham,* 12 Mass. R. 358. *Brown* v. *Wood,* 17 Mass. R. 68.

If the will must be considered as legally proved and operative, the demandants claim to recover by virtue of its provisions, on the ground that the tenant and Henry Tallman have forfeited all title derived from it, by having violated the provisions contained in the twentieth clause. It is in these words. "The bequests, devises and gifts, I have made to my two sons James and Henry, are made to them on condition and expressly, that they nor either of them, at any time become bondsmen or sureties for any person or persons whatever after my decease; and in case they, or either of them, should do so,

they shall in such case forfeit all bequests, legacies, and devises given them in this my will." The demandants offered to introduce testimony to prove the alleged violation, but it was not received.

The premises demanded were, by the seventh clause of the original will, devised to the tenant during his natural life. The remainder was devised to others. The devise to the tenant was revoked by the second clause of the codicil, and the premises were thereby devised to Henry Tallman in trust for the tenant during his life. The legal estate became thus vested in Henry Tallman, without his having any beneficial interest in it. What would be the effect upon that life estate of a violation by Henry Tallman only of the provisions of the twentieth clause in the will? Could it have been the intention of the testator that the rights of the *cestui que trust,* supposing him to be blameless, should be destroyed by any prohibited act of the trustee? If so, he must have intended to punish the obedient for the transgressions of the disobedient. The clause admits of a reasonable and fair construction without coming to such a conclusion. By all bequests, legacies and devises *given to them,* the testator, doubtless, intended all such, as were given for their own benefit, and not such as were entrusted to them for the benefit of others.

Any other construction would be at variance with the general rule of law, that the power of the trustee over the legal estate exists only for the benefit of the *cestui que trust,* and no act of the trustee can prejudice or narrow his title. Cruise's Dig. tit. 12, c. 4, § 6 and 8. *Philips* v. *Brydges,* 3 Ves. 127. *Selby* v. *Alston, idem,* 341. To this general rule there are certain exceptions not affecting this case, and not necessary to be considered here. 2 Fonb. Eq. c. 7, § 1, note (a). 1 Mad. Ch. Pr. 363. The legal estate for life, which became vested in the trustee, will remain therefore unaffected by any act of forfeiture, which may have been committed by him.

What can be the effect of any prohibited act, which might cause a forfeiture of his rights, committed by the tenant and *cestui que trust,* upon the legal title vested in another? Sure-

ly not to destroy the legal title, over which it was the design of the testator to deprive him of all power by devising it to another.

A forfeiture by the tenant of his rights under the will might affect his right to occupy the premises, or to receive the income or profits ; but such rights are not in controversy in this action.

It is the legal title only, which is here litigated ; and the demandants, to recover that, must rest upon the strength of their own title, and not upon the weakness of the legal right of the tenant to the occupation of the premises.   Upon the facts reported in this case, they can establish no title to them, either upon the ground, that they were the undevised estate of the testator, or upon the ground, that although devised, the title of the devisee had been forfeited.

If a forfeiture could have been established, there would have been other difficulties, not necessary to be considered, which might have prevented a recovery by the wife, claiming as an heir at law.

*Nonsuit confirmed.*