## THOMPSON v. NICHOLS.

### (District Court, D. Maine. January 27, 1919.)

### No. 786.

1. COURTS ⬤281—FEDERAL COURT—DISTRICT COURT—JURISDICTION.

Under Judicial Code, § 24 (Comp. St. § 991), declaring that the District Court shall have jurisdiction of all suits of a civil nature, at common law or in equity, where the matter in controversy exceeds $3,000, and is between citizens of different states, the District Court is without jurisdiction of purely probate matters, and such court has no jurisdiction to establish or annul a will in any district where the state in which the district is located has intrusted jurisdiction of probate matters to a probate court and has not given such jurisdiction to courts of equity.

2. COURTS ⬤200—MAINE—PROBATE COURTS.

Under Rev. St. Me. 1916, c. 67, §§ 2, 9, chapter 73, §§ 10, 11, and chapter 82, § 6, and in view of history of probate matters, the equity courts for Maine are without jurisdiction of the purely probate matters of approving or annulling a will.

3. COURTS ⬤281—FEDERAL COURTS—JURISDICTION—"SUIT."

A proceeding in a probate court to probate or annul a will is not a "suit," within Judicial Code, § 24 (Comp. St. § 991), giving the District Courts original jurisdiction of all suits of a civil nature at common law or in equity, etc.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Suit.]

4. COURTS ⬤255—FEDERAL COURTS—DISTRICT COURT.

If a federal District Court has jurisdiction over a proceeding to annul a will, admitted to probate in the probate court of a state, such jurisdiction must have been conferred by statute.

5. COURTS ⬤281—JURISDICTION—PROBATE—ANNULMENT.

Where an heir at law, who would be entitled to share in the estate of a decedent, were there no will, sought to enjoin the executor from carrying out the terms of the will that had been probated, and to have the executor declared an administrator de son tort, on the ground that the decision of the probate court denied due process of law, the heir, regardless of whatever language he may use in stating his attack, is seeking a nullification of a decree of the probate court, and a federal court, although there be requisite diversity of citizenship and jurisdictional amount, has no jurisdiction over the proceeding.

6. CONSTITUTIONAL LAW ⬤306—DUE PROCESS OF LAW—DENIAL.

Where a will was duly admitted to probate by the state probate court, and the proceedings were conducted according to the rules and principles established by law for the protection and enforcement of the rights of those interested in the estate, *held*, that an heir at law was not denied due process of law.

In Equity. Bill by Fred S. Thompson against Alexander H. Nichols. On defendant's motion to dismiss. Bill dismissed, and plaintiff's motion to strike from the records defendant's pending motion overruled.

Arthur S. Littlefield, of Rockland, Me., A. E. Hanson, of Malden, Mass., and Eugene C. Upton, of Boston, Mass., for complainant.

Wm. P. Whitehouse, of Augusta, Me., Robert T. Whitehouse, of Portland, Me., and Robert F. Dunton, of Belfast, Me., for defendant.

HALE, District Judge. This case is now before the court on defendant's motion to dismiss plaintiff's bill of complaint for want of

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

jurisdiction. By the bill, the plaintiff, a citizen of Illinois, proceeds against the defendant, a citizen of Maine, and invokes the jurisdiction of the court, on the ground of such diversity of citizenship. The bill alleges that the petitioner has been deprived of his distributive share as heir at law of the intestate estate of his aunt, Henrietta T. Nickels, late of Searsport, in this district, namely, of a part of that estate exceeding in value $3,000, and that he has been so deprived by reason of a violation of the right to due process of law, secured to him by the Constitution of the United States, and by the Fifth and Fourteenth Amendments thereto; by the failure of evidence, that a certain instrument, alleged to be a copy of her will and executed by her in 1911, continued unrevoked as her will till death, notwithstanding the nonproduction of the original, and the consequent legal presumption of destruction; also by the failure of any evidence that she had destroyed the instrument in the belief that she had executed a later legal will, and in that, if there were such evidence, it would not be competent upon which to base a decree, there being no statutory authority for such procedure in Maine.

After the allegation of the diversity of citizenship, the plaintiff alleges that he is a nephew and heir at law of the intestate, who died in February, 1914, leaving the petitioner as one of the heirs at law, and entitled to one-sixth of the estate, which one-sixth amounts to more than $3,000; that the defendant is administering the estate under a decree of the probate court of Waldo county, Me., purporting to admit to probate an alleged will of the intestate, which was allowed in May, 1914, by the probate court of Waldo county, as the last will of Henrietta T. Nickels, without proof of the necessary jurisdictional facts, without process of law which would justify the decree, and without giving the plaintiff due process of law, as provided by the Constitution of the United States. The bill alleges that this decision of the probate court was sustained on petition brought in the probate court of Waldo county and appealed to the supreme court of probate and to the law court of Maine, and a third time sustained upon a second petition to annul, filed in the probate court of Waldo county, by a decree in that court dismissing the petition, the last decree being unappealed from.

The bill alleges that the original decree of the probate court of Waldo county, dated May 12, 1914, was made without due process of law, in that the decree was based upon the doctrine that, where a prior will is destroyed by the testator in the belief that he has legally made a later will, the revocation of the prior will by destruction is dependent upon, and related to, the valid execution of the later will, and, if no later will was in fact executed, then there is no revocation, and the former will may be admitted to probate by copy; that this doctrine is called the doctrine of dependent relative revocation, and that such doctrine has no recognition in the Law of Maine; and, even if it were so recognized by the law of Maine, there is no evidence that the instrument of November 9, 1911, the execution of which was approved by copy in the probate court, continued in the mind of the said Henrietta T. Nickels, unrevoked, as her will till death, or that she had

destroyed the instrument in the belief that she had theretofore executed a legal will.

Among the prayers of the bill are: That this court will decree that the employment of the doctrine of dependent relative revocation in the courts of probate of Maine is beyond the statutory powers of the probate courts of Maine, and without due process of law; that the defendant has no legal right to the custody of the estate of Henrietta T. Nickels under a decree obtained without due process of law; that, under color of decree made without due process of law, the defendant has no right to withhold from the plaintiff his one-sixth of the property to which he is entitled as an heir at law; that the defendant, its servants and agents, be enjoined from enforcing or carrying out the decree of the probate court of Maine of May 12, 1914, said decree being made without due process of law; that the defendant be adjudged to be administrator de son tort; that the amount of the plaintiff's distributive share in the estate shall be established as a debt upon the estate, or a trust impressed upon it for the plaintiff's benefit; that the plaintiff be adjudged to be entitled to one-sixth of the estate after payment of debts and expense of administration; that, under an order of the court for the sale of assets of the estate, the administrator shall be obliged to sell listed stock first, and retain the Maine Belting Company stock and the unlisted stock for distribution in kind, or that the defendant shall be ordered by this court to go into the probate court of Maine and ask that court to declare the probated document of 1911, by alleged copy, to be null and void and revoked; and that the defendant be ordered to ask for a further appointment as administrator of the estate, by a decree made under due process of law.

The plaintiff's contention is that by this bill he is not seeking to vacate a decree of the probate court or of any state court, but that he is seeking to restrain the action of a void decree, made without due process of law; that the court has jurisdiction under its general equity powers, the controversy being inter partes, between citizens of different states; that the bill shows the unlawful taking of plaintiff's property without due process of law; that the authority of the state cannot be allowed to restrict the federal court of its authority conferred by the Constitution of the United States; and that the plaintiff should be allowed the decree of this court to protect his property, even though, in the protection of such property, a decree of the probate court is disregarded or set aside.

The defendant's motion to dismiss states ten different grounds of dismissal. The first ground of dismissal is that:

"The plaintiff's bill seeks to nullify and prevent the enforcement of a decree of the probate court admitting a will to probate, and to interfere with the custody and administration of the estate of a decedent thereunder, which are purely matters of probate, intrusted by the state, from which the authority to make and prove wills is derived, exclusively to the jurisdiction of the probate court, and as such are not within the jurisdiction of a court of the United States."

[1] If this court has jurisdiction over the matters stated in the bill, it obtains such jurisdiction from section 24 of the Judicial Code

(Act March 3, 1911, c. 231, 36 Stat. 1091 [Comp. St. § 991]), the material and applicable part of which section is:

"The District Courts shall have original jurisdiction as follows: First. Of all suits of a civil nature, at common law or in equity, * * * where the matter in controversy exceeds, exclusive of interest and costs, the sum * * * of $3,000, and * * * is between citizens of different states."

Is the matter before us a suit of a civil nature, at common law or in equity? Or does it present a pure matter of probate, in that it seeks to prevent the enforcement of a decree of the probate court of Maine, admitting a will to probate?

The solution of the question does not require original reasoning, but rather an examination of the leading cases upon a subject which has received much consideration. It is the clear doctrine of the federal courts that matters of pure probate are not within the jurisdiction of courts of the United States, for the reason that the authority to make wills is derived from the state; and the requirement of probate is a regulation to make a will effective. The leading case in this circuit, and one of the most important cases upon the subject in the federal courts, is In re Cilley (C. C.) 58 Fed. 977. In that case Judge Aldrich made a careful and exhaustive examination of the whole question. He began by inquiring what was meant by "suits of a civil nature in law and in equity." He considered whether those words, as understood when the Constitution was framed, embraced proceedings for the probating of wills. He pointed out clearly that, by decisions in England and America, these words in the Judiciary Act and in the Constitution were not used in any colloquial sense, but in the broad, common, well-determined sense by which equity and common law are understood in this country and in England. He cited leading decisions of the federal courts, among others Tarver v. Tarver, 9 Pet. 174, 9 L. Ed. 91, Broderick's Will, 21 Wall. 503, 22 L. Ed. 599 (1874), Fouvergne v. City of New Orleans, 18 How. 470, 15 L. Ed. 399, Ellis v. Davis, 109 U. S. 485, 3 Sup. Ct. 327, 27 L. Ed. 1006 (1883), and other cases, holding that it was the settled law of England at the time of the adoption of our Constitution, as well as at the time of the enactment of various Judicial Codes under the Constitution, that the Court of Chancery will not entertain jurisdiction of questions in relation to probate upon the validity of a will, which the ecclesiastical court was competent to adjudicate; but it would act only in cases where the ecclesiastical court could furnish no adequate remedy;—that jurisdiction to probate wills was withdrawn from the spiritual courts and bestowed upon the probate courts late in the seventeenth century. He cited many decisions of the state courts to show that decisions to establish wills are not classed as suits at common law or in equity, and were not so classed in the early history of the country. He distinguished ordinary probate cases from cases like Gaines v. Fuentes, 92 U. S. 10, 23 L. Ed. 524, which was a suit in form to annul a will and to recall the decree by which it was probated, but was in reality a suit brought againt a devisee by strangers to the estate to annul the will as a muniment of title, and to restrain the enforcement of the decree by which its validity had been established so far as it affected property.

He pointed out that this class of cases was not inconsistent with the repeated declarations of the Supreme Court that federal courts have no jurisdiction over the probate of wills, and that the apparent confusion arises from the fact that cases like Gaines v. Fuentes came either from the territorial courts or from states where, by statute, courts of equity have been clothed with jurisdiction to entertain bills to set aside wills on the ground of fraud. Jurisdiction may be vested in the state courts of equity by statute; and, when so vested, the federal courts sitting in states where such statutes exist will also entertain concurrent jurisdiction in a case between proper parties. No such jurisdiction exists over probate proceedings in a state where courts of equity are not clothed with such statutory power. Ellis v. Davis, 109 U. S. 485, 3 Sup. Ct. 327, 27 L. Ed. 1006 (1883). Judge Aldrich further makes the pertinent suggestion that, from the foundation of the government, the federal courts have disclaimed jurisdiction over probate matters, leaving their exercise to the probate courts created for that purpose, and for kindred special purposes, just as the English courts left such matters to the ecclesiastical courts; and that, when Congress intends to make so radical a change as to confer jurisdiction in such a field upon the federal courts, it will not leave room for any doubtful construction, but will use definite and unmistakable language.

In Wahl v. Franz, 100 Fed. 680, 40 C. C. A. 638, 49 L. R. A. 62 (1900), the Circuit Court of Appeals of the Eighth Circuit reviews Judge Aldrich's opinion in the Cilley Case, and says of it that—

"The opinion * * * is both instructive and strong, and seems to us conclusive, so much so that little can be added thereto."

See, also, Cilley v. Patten (C. C.) 62 Fed. 498, showing that the same doctrine is also applicable to setting aside a will. It is not necessary to review the many cases that have followed the Cilley Cases.

In Farrell v. O'Brien, 199 U. S. 89, 109, 110, 25 Sup. Ct. 727, 732, 50 L. Ed. 101 (1904), the Supreme Court passes conclusively upon the question. In speaking for the court, Chief Justice White considers and quotes at length from the leading cases upon the subject. He analyzes Gaines v. Fuentes, 92 U. S. 10, 20, 21, 23 L. Ed. 524. In commenting upon it, he observes:

"Having decided that the suit was in all essential particulars one inter partes, for equitable relief to cancel an instrument alleged to be void and to restrain the enforcement of a decree alleged to have been obtained by false and insufficient testimony, the court was brought to consider whether the law of Louisiana allowed such equitable relief, and said [92 U. S. 20, 23 L. Ed. 524]:

" 'There are no separate equity courts in Louisiana, and suits for special relief of the nature here sought are not there designated suits of equity. But they are none the less essentially such suits; and if by the law obtaining in the state, customary or statutory, they can be maintained in a state court, whatever designation that court may bear, we think they may be maintained by original process in a federal court, where the parties are, on the one side, citizens of Louisiana, and, on the other, citizens of other states.' "

He then reviewed the Broderick Will Case, 21 Wall. 503, 22 L. Ed. 599, Goodrich v. Ferris, 214 U. S. 80, 29 Sup. Ct. 580, 53 L. Ed. 914, Roller v. Holly, 176 U. S. 398, 20 Sup. Ct. 410, 44 L. Ed. 520, Byers

254 F.—62

v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, 37 L. Ed. 867, Ellis v. Davis, 109 U. S. 485, 3 Sup. Ct. 327, 27 L. Ed. 1006, Hook v. Payne, 14 Wall. 253, 20 L. Ed. 887, and other leading authorities upon the subject. He thus concludes his review of the cases:

"Let us, then, first deduce the principles established by the foregoing authorities as to the power of a court of the United States over the probate or revocation of the probate of a will. An analysis of the cases, in our opinion, clearly establishes the following:

"First. That, as the authority to make wills is derived from the state and the requirement of probate is but a regulation to make a will effective, matters of pure probate, in the strict sense of the words, are not within the jurisdiction of courts of the United States.

"Second. That where a state law, statutory or customary, gives to the citizens of the state, in an action or suit inter partes, the right to question at law the probate of a will or to assail probate in a suit in equity the courts of the United States in administering the rights of citizens of other States or aliens will enforce such remedies."

The most recent federal decision is that of Smith v. Jennings, 238 Fed. 48, 151 C. C. A. 124. Here is found a review of all the old cases, and of the late cases of Garzot v. De Rubio, 209 U. S. 283, 28 Sup. Ct. 548, 52 L. Ed. 794, and Goodrich v. Ferris, 214 U. S. 71, 29 Sup. Ct. 580, 53 L. Ed. 914, supra.

From the above review of cases it is well settled that the federal courts have no jurisdiction in equity, either by virtue of statutes, or general chancery powers, over distinctly probate matters; that they have no jurisdiction to establish or annul a will in any district where the state in which that district is located and the suit is brought has intrusted jurisdiction of probate matters to a probate court, and has not, by statute, given jurisdiction to the courts of equity in such state.

[2] Has the state of Maine intrusted exclusive jurisdiction to establish or to annul a will to its probate courts? Or has it granted jurisdiction in such matters, concurrently or otherwise, to its equity courts?

The jurisdiction of the probate court of the state of Maine is found in chapter 67, § 9, of the Revised Statutes of Maine of 1916:

"Each judge may take the probate of wills, and grant letters testamentary or of administration on the estates of all deceased persons, who, at the time of their death, were inhabitants or residents of his county, or who, not being residents of the state, died leaving estate to be administered in his county, or whose estate is afterwards found therein, also on the estate of any person confined in the state prison under sentence of death or of imprisonment for life, and has jurisdiction of all matters relating to the settlement of such estates."

Chapter 73, §§ 10 and 11, provides as follows:

"Any judge of probate, having jurisdiction of the trust, and the Supreme Judicial Court in any county, on application of the trustee, or of any person interested in the trust estate, after notice to all interested, may authorize or require him to sell any real or personal estate held by him in trust, and to invest the proceeds thereof, with any other trust moneys in his hands, in real estate, or in any other manner most for the interest of all concerned therein, and may give such further directions as the case requires, for managing, investing and disposing of the trust fund, as will best effect the objects of the trust.

"Either of said courts may hear and determine, in equity, all other matters relating to the trusts herein mentioned."

The last two of the above provisions have, in substance, been in effect ever since the separation of Maine from Massachusetts. In Given v. Simpson, 5 Greenl. 303, the jurisdiction of the Supreme Judicial Court of Maine, as a court of equity, in regard to testamentary trusts, was defined and limited by the court. It was held that:

"The language of St. 1821, c. 50, giving to this court equity jurisdiction 'to hear and determine all cases of trust arising under deeds, wills, or in the settlement of estates,' is applicable only to express trusts arising from written contracts of the deceased; that is, to trusts expressly and directly created, not to those implied by law, or growing out of the official character or situation of the executor or administrator."

As to the words "in settlement of estates," the court said:

"This vague language may be satisfied by applying it to contracts not under seal, respecting the settlement of estates, whereby trusts are created; and there is therefore no reason for extending its meaning any further, especially as a system, peculiar in itself, is by law established, for regulating and enforcing the settlement of the estates of persons deceased, by the judges of probate. The exercise of an original equity jurisdiction by this court in these cases would disturb and derange this system, unless expressly confined to those trusts which arise under the contracts in writing of the deceased; that is, to trusts expressly and directly created, not to those implied by law, or growing out of the official situation, or incidental to the official character of an executor or administrator."

Chapter 82 of the Revised Statutes of Maine of 1916, § 6, cl. 10, provides that a court of equity has jurisdiction:

"To determine the construction of wills and whether an executor, not expressly appointed a trustee, becomes such from the provisions of a will; and in cases of doubt, the mode of executing a trust, and the expedience of making changes and investments of property held in trust."

Chapter 67, § 2, provides that:

"The courts of probate shall have jurisdiction in equity, concurrent with the Supreme Judicial Court, of all cases and matters relating to the administration of the estates of deceased persons, to wills, and to trusts which are created by will or other written instrument. Such jurisdiction may be exercised upon bill or petition according to the usual course of proceedings in equity."

It must be observed that the above sections, as well as sections 10 and 11 of chapter 73, have no relation to the establishment or annulment of wills. Section 2 of chapter 67, just cited, is taken from an act passed in 1915, which gives the courts of probate such jurisdiction as the Supreme Judicial Court has in equity matters relating to the estates of deceased persons, to wills, and to kindred subjects. It is not an act giving jurisdiction of probate matters to the equity court; it enlarges in no way the jurisdiction of the equity court; it does enlarge the jurisdiction of the probate court, to the extent of the jurisdiction now possessed by equity courts concerning matters relating to wills and to the settlement of estates. By the Public Laws of 1874, now embodied in the Revision of 1916 as clause 14, the Supreme Judicial Court is given—

"full equity jurisdiction, according to the usage and practice of courts of equity, in all other cases where there is not a plain, adequate and complete remedy at law."

In tracing the usage of equity courts, it will be found that, at the time of the adoption of the Constitution of the United States, the English High Court of Chancery did not exercise jurisdiction over matters of probate, such as the approving or annulling of wills. It did not entertain questions in relation to the probate or validity of a will. Broderick's Will, 21 Wall. 503, 22 L. Ed. 599 (1874); In re Cilley (C. C.) 58 Fed. 977, 982. From an early period of history, in all the states constituting the United States, special tribunals, unknown to the ancient judicial system of England, had been created under different names, such as "Probate Courts," "Surrogate Courts," "Orphans' Courts," with statutory jurisdiction over all matters of probate and the administration of estates. As a result of such legislation, in a few of the states, original chancery jurisdiction over all matters has been held to remain unimpaired in spite of the jurisdiction of probate courts, and is exercised concurrently with the latter; but in the great majority of the states the original chancery jurisdiction is denied, or its exercise is suspended, in all matters specified by statute to be within probate jurisdiction.

In secton 1154 (edition of 1905), Pomeroy has summarily grouped the states into three classes. In the states of the first class the original equitable jurisdiction over probate administrations remains unabridged by statute and is concurrent with that possessed by the probate courts. In the second class the jurisdiction of the probate courts over everything relating to the administration and settlement of a decedent's estate is substantially exclusive; the equitable jurisdiction over the subject is neither concurrent, nor auxiliary, nor corrective. In the third class the equitable jurisdiction is not concurrent; it is simply auxiliary. Pomeroy puts the states of Connecticut, Indiana, Maine, Massachusetts, Michigan, Nebraska, Nevada, New Hampshire, Oregon, and Pennsylvania into the second group, namely, into the class where the jurisdiction of the probate courts is exclusive in everything relating to the settlement of estates and the probate of wills.

In Whitehouse's Equity Practice, § 35, it is stated that Maine unquestionably belongs in Pomeroy's second class; that is, to the class where equity jurisdiction over probate matters is denied absolutely, or suspended in all matters specified by statute as within probate jurisdiction. It is further stated that in Maine courts of chancery will not exercise concurrent jurisdiction with courts of probate, but only supplementary or auxiliary jurisdiction in certain matters of administration involving special equitable features, which would constitute sufficient ground for equitable jurisdiction, as in Hawes v. Williams, 92 Me. 492, 43 Atl. 101, citing Graffam v. Ray, 91 Me. 234, 39 Atl. 569, in which case, in speaking for the court, Mr. Justice Strout said:

"The probate court has exclusive jurisdiction, subject to appeal to the supreme court of probate, of the estates of decedents, and their final settlement and distribution, including the settlement of the accounts of the personal

representative. * * * All these questions would be determined by the probate court, and the executor charged for such amount as in equity and under the rules of law he was liable for. All these matters are within the exclusive jurisdiction of the probate court, and cannot be passed upon by a common-law tribunal. The probate court is invested with ample power in these respects."

In Cousens v. Advent Church, 93 Me. 292, 45 Atl. 43, it was held that the Supreme Court, sitting in equity, could not establish an unprobated will; that such will should be presented for probate to the probate court; that the prior probate of an earlier will did not preclude the probate of a later will; that the probate court, being authorized to admit wills to probate, has authority to revise or revoke its former decree, so as to give effect to the last will. In speaking for the court, Mr. Justice Strout said:

"Wills do not become operative until proved and established in some court having jurisdiction for that purpose—in this state, by allowance by the court of probate, or the appellate supreme court of probate. *No other tribunal can give effect to a will. Until established in that forum it has no life. This court, sitting in equity, cannot establish and execute an unprobated will.* * * * The power of the probate court to revoke a decree granting administration is recognized in R. S. c. 64, § 19, which requires an administrator to give a bond, with the condition, among others, 'to deliver the letters of administration into the probate court, in case any will of the deceased is thereafter proved and allowed.' * * * To grant the prayer of the bill would require this court, sitting in equity, to assume the jurisdiction of the probate court, and establish and execute a will, never presented to a court of probate. This is beyond the province of equity. Wolcott v. Wolcott, 140 Mass. 194 [3 N. E. 214]."

The court cites Bowen v. Johnson, 5 R. I. 119, 73 Am. Dec. 49, in which case the Supreme Court of Rhode Island held that the power to revoke a probate once granted, though nowhere expressly recognized in the statutes of that state, was a just and necessary power to be implied from the statute granting general authority to "take the probate of wills and grant administration on the estate of deceased persons."

Waters v. Stickney, 12 Allen (Mass.) 1, 90 Am. Dec. 122, contains an historical discussion of the powers of the probate court in such matters. Following these authorities, in Merrill Trust Co. v. Hartford, 104 Me. 566, 572, 72 Atl. 745, 129 Am. St. Rep. 415, a purely probate proceeding, and not a suit between parties, it was held that a probate court is the tribunal having the power, upon subsequent petition, to vacate or annul a prior decree of probate of a will, when such prior decree is clearly shown to be without foundation in law or fact. In Patten v. Tallman, 27 Me. 17, 24, 27, the Maine court had before it the construction of a will as a muniment of title. The will came before the court as a will already "proved and allowed in the probate court for the county of Lincoln." In speaking for the court, Mr. Justice Shepley said:

"The original jurisdiction for the probate of wills is by statute vested exclusively in the courts of probate. The courts of common law have no jurisdiction, or right to determine, whether a will has been legally executed or not. If a will be presented to them as a muniment of title, which has not been proved and allowed by a probate court, it cannot be received and proved, nor its validity be admitted. If it has been approved and allowed by a pro-

bate court having jurisdiction, its validity cannot be called in question by the court of common law. The adjudication of the court of probate, not vacated by an appeal, is final and conclusive upon all persons. Whether the court of probate decided any questions necessarily arising and involved in its adjudication correctly or incorrectly can never be made a matter of inquiry and decision in a common-law court, to affect that adjudication. Such have been the settled doctrines for a long time in this and in several of the other United States. Dublin v. Chadbourn, 16 Mass. 433; Laughton v. Atkins, 1 Pick. [Mass.] 535."

From the whole current of judicial authority in Maine, it is clear that the power to revoke or annul a will, once admitted to probate, rests solely with the probate court decreeing its allowance. The Supreme Judicial Court, as the equity court of Maine, has no power to entertain a proceeding for the revocation of a will admitted to probate. It follows, then, from what has been said before, that the District Court of the United States, within the district of Maine, has no such power.

[3, 4] It is now necessary to inquire whether proceedings in the probate court to probate a will have the character of "suits," and have been treated as such.

Such proceedings are, as has been seen, distinctly statute proceedings. They do not arise between parties; they are entirely matters of statute; in fact, the whole subject of wills is a matter of statute. In United States v. Perkins, 163 U. S. 625, 627, 16 Sup. Ct. 1073, 41 L. Ed. 287, in passing upon the inheritance tax under a state law, the Supreme Court had occasion to discuss, historically, the right to dispose of property by will. The court cited 2 Blackstone, 492, where the learned commentator says that by the common law, as it stood in the reign of Henry II, a man's goods were to be divided into three equal parts; one part went to the heirs; another part to his wife; a third part was at his own disposal. Prior to the reign of Henry VIII, the right of a man to make his will was thus limited in matters of personal estate, and did not extend at all to real estate. Until special tribunals were founded by the statutes of the several states constituting this nation, in the manner to which reference has been made, there was no machinery for creating a representative to take care of the property of a person after he died. Nobody had the title to the property of a deceased person, except the heir of the real estate, in the absence of a will devising it; and even this was subject to the right of sale for the payments of debts. But when a representative had once been created by statute, under the machinery of such tribunals as probate courts, such representative became a party upon one side against whom any person having a claim could proceed to establish his claim; and when such claimant did proceed to establish his claim, he did so by a suit. The claimant was one party to such suit; the representative of the estate was the other party; and so the suit was inter partes. Such suit could be brought either in law or equity in the state courts when the parties were citizens of the state; they could also be entertained by the federal court when diversity of citizenship appeared, and when jurisdiction was thus given; but this became true only after the will had become probated, and thus had been given life. Until the machinery set up by the state for

creating a custodian of the estate had done its work, such estate was not ripe either for distribution or attack.

In Hook v. Payne, 14 Wall. 253, 20 L. Ed. 887, discussed in Farrell v. O'Brien, 199 U. S. 89, 25 Sup. Ct. 727, 50 L. Ed. 101, an administrator had been duly appointed in a certain estate; a bill in equity was brought against him by a distributee. The bill did not question the validity of his appointment or his authority to represent the estate; it sought, on the ground of fraud, to annul a certain release which the distributee had given to the administrator relating to other shares; it sought to have a decree against such distributee for the correct amount of his distributive share. The court took jurisdiction as between the parties to the suit, and granted relief; but it refused to deal generally with the estate, and the rights of persons other than the complainant. It refused to interfere in any way with the administrative functions of the administrator, as distinguished from the rights of litigants in the suit inter partes which had been brought. It did not undertake to interfere with probate proceedings. The case is not in conflict with the doctrine of the United States courts that they have no jurisdiction in equity to allow or disallow a will. In Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, 37 L. Ed. 867, the court distinctly says that it had no original jurisdiction to administer an estate and, by entertaining jurisdiction of a suit against the administrator, could not draw to itself the full possession of the estate, or the power to determine all claims against it. See, also, Ball v. Tompkins (C. C.) 41 Fed. 486.

In Waterman v. Canal Louisiana Bank, 215 U. S. 33, 30 Sup. Ct. 10, 54 L. Ed. 80, a bill was filed by an heir against the executor for the determination of the plaintiff's interest in an alleged lapsed legacy. The will was in no way attacked; the validity of the appointment of an executor was not attacked; no decree of the probate court was attacked. The court cited Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, 37 L. Ed. 867, Payne v. Hook, 7 Wall. 425, 19 L. Ed. 260, and other cases, holding that a debt may be established by the federal court in an estate as administered by the probate court. The case recognized that in proceedings purely of a probate character there was no jurisdiction of the federal courts. It reaffirms the doctrine of Farrell v. O'Brien, 199 U. S. 89, 25 Sup. Ct. 727, 50 L. Ed. 101, that a court of the United States could not entertain jurisdiction of a bill to set aside the probate of a will in the state of Washington because, by the statutes of that state, the proceeding was one purely in rem, and not a suit inter partes sustainable in a court of equity; that in proceedings of a purely probate character there was no jurisdiction in a federal court. In the Farrell Case, referred to, the bill was brought to annul the probate of a will for lack of lawful procedure, for application of a wrong legal principle, and on the ground that under the laws of the state real estate could not be disposed of by a nuncupative will; and the opinion of the court was distinct and conclusive that the law of the state authorized a proceeding for contest of a will only in the court which had admitted the will to probate; that the authority conferred concerning the contest over the probate of a will was an essential part of the probate procedure, cre-

ated by the laws of the state, and was not an ordinary suit between parties; that the remedy afforded by the laws of the state to secure the probate, or the revocation of the probate, of a will, were proceedings of a probate character, and did not constitute an action, or a suit inter partes; that, although there was diversity of citizenship, the court was without jurisdiction, so far as the bill sought a declaration of the nonexistence of a will and the consequent nullity of the probate.

In Ellis v. Davis, 109 U. S. 485, 3 Sup. Ct. 327, 27 L. Ed. 1006, the Supreme Court held that the original probate of wills is a matter of state legislation and depends upon local law, for it is that law which confers the power of making wills; that no instrument can be effective as a will until it is probated; that no rights and relations to it can be contested between parties until preliminary probate has first been made; that power has not been conferred upon the courts of the United States to probate a will; that, if the administration is incomplete and in fieri, application must be made to the courts of probate which have possession of the subject, and exclusive jurisdiction over it. After a will has once been proved and has obtained life in the world, the United States courts permit suits to be brought to construe it as an existing instrument, and even to charge the estate with the amount of a judgment recovered against it in another suit. Lawrence v. Nelson, 143 U. S. 215, 12 Sup. Ct. 440, 36 L. Ed. 130 (1891). In Christianson v. King County, 239 U. S. 356, 373, 36 Sup. Ct. 114, 121 (60 L. Ed. 327) Mr. Justice Hughes, for the Supreme Court, reviews the proceedings of the probate court of the territory of Washington. He says:

"Despite the informality of the petition, the appointment of the administrator was not void, and, not being void, it is not subject to collateral attack."

He cites many cases.

"It appears that subsequently the probate court, after opportunity had been afforded to discover heirs, entertained a petition of the administrator for final account and distribution. The statutory notice * * * was published, and on the return day the proceeding was duly continued, and, on hearing, the decree was entered settling the account, finding that there were no heirs, and directing distribution of the real property, as described, to the County of King. This proceeding was essentially in rem [citing cases]. It was competent for the court to inquire whether there were heirs, and, if there were such, to determine who were entitled to take according to the order prescribed by the statute; and also, if it was found that there were no heirs, to make the distribution to the county as the statute required. It is apparent that there was no deprivation of property without due process of law. The court, after appropriate notice, did determine that there were no heirs and its decree being the act of a court of competent jurisdiction under a valid statute bound all the world including the plaintiff in error. It cannot be regarded as open to attack in this action. Grignon's Lessee v. Astor [2 How. 319, 11 L. Ed. 283] supra; Florentine v. Barton [2 Wall. 210, 17 L. Ed. 783] supra; Caujolle v. Ferrie, 13 Wall. 465, 474 [20 L. Ed. 507]; Broderick's Will, 21 Wall. 503 [22 L. Ed. 599]; Simmons v. Saul [138 U. S. 439, 11 Sup. Ct. 369, 34 L. Ed. 1054] supra; Goodrich v. Ferris, 214 U. S. 71, 80, 81 [29 Sup. Ct. 580, 53 L. Ed. 914]."

It is urged in behalf of the plaintiff that, in some way, certain cases above cited—and particularly the Waterman Case—sustain the contention that this suit can be maintained under the equity power of the fed-

eral courts in cases arising between citizens of different states; that under general equity grounds of jurisdiction, this controversy, being between citizens of different states, can be passed upon in the federal courts. I cannot sustain such contention. The cases just cited fully sustain the doctrine that the federal courts cannot control property in possession of the state courts under probate proceedings; that, as courts of chancery, they can have no jurisdiction of a purely probate matter; they cannot deal with a will until it has obtained life by going through probate machinery. I need spend no time considering the general chancery powers of the federal courts to assume jurisdiction over probate matters. Such jurisdiction, if it is to be found in the United States courts, must have been conferred upon them by an act of Congress. Loring v. Marsh, Fed. Cas. No. 8,515. If it has been conferred by any statute, it is by the section of the Judicial Code to which I have referred, and which provides that this court shall have original jurisdiction of all suits of a civil nature at common law or in equity, where the amount in controversy exceeds $3,000 and is between citizens of different states. From the decisions of the courts to which I have called attention, it is clear that a probate proceeding is not a suit of a civil nature at common law or in equity; it has never been regarded as such by the courts of this country.

[5, 6] In the case at bar the learned counsel for the plaintiff urges that the bill does not seek to set aside the probate of a will, but that it is a suit which obtains the jurisdiction of this court by diversity of citizenship, and seeks to give the plaintiff due process of law in reference to the custody of a certain estate, and to restrain action on a void decree; that this court has jurisdiction to give due process of law even though, in the course of enforcing its decree, it should be found that there is a decree of the probate court of Maine inconsistent with the decree of the federal court, and with the right of the plaintiff to have due process of law. But it is the duty of this court to put the accent of its decree upon the vitals of a controversy, and not upon the mere form. The bill does seek to enjoin the executor from carrying out the terms of a will that has been probated; it seeks to have the executor declared an administrator de son tort, and to have the plaintiff decreed to be entitled to one-sixth of the estate as next of kin and heir. It thus seeks to have this court decree that there has been no legal probate of a will, that the estate is intestate, and that, though the will has been through the machinery of probate, it is, in fact, void. It seeks the decree of this court that the defendant executor has no legal right to the custody of the estate; it seeks to interfere with the disposition of the property under the will by asking the court to decree what sort of stock shall be sold first. It further asks, as an alternative, that the court will order the executor, armed with a decree of this court, to go into the probate court of Maine, and ask that court to declare its decree, probating a will, to be null and void. The bill seeks to attack the probate of a will, and not merely to construe it after it has been through the probate machinery. It is clear that there can be no difference in law between asking the court to declare a will to be null and void, and asking the court to enjoin an executor, appointed under it, from enforcing its

provisions. It seems clear that the court is prevented from making an illegal decree in reference to one-sixth of the estate, as much as it would be prevented from making an illegal decree upon the whole estate. Whatever language the plaintiff may use in which to state his attack upon the probate court, the fact remains that what he seeks from this court results in a nullification of a decree of the probate court of Maine.

Judge Hough has lately discussed the subject of "due process of law" in an illuminating way. 32 Harvard Law Review, 218. He shows the difficulty of defining law or its due process, observing that "Moses, Blackstone, and Mr. James Coolidge Carter have not permanently succeeded in such definition." Judge Hough's article is valuable, not only in its clear reasoning, but in its extended citations. Among many other references, he cites Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565, in which case Mr. Justice Field defines the term "due process of law," when applied to judicial proceedings, as meaning a course of legal proceedings according to those rules and principles which have been established by our jurisprudence for the protection and enforcement of private rights. He observes that, to give such proceedings any validity, there must be a competent tribunal to pass upon their subject-matter.

In the case at bar, in my opinion, the plaintiff in his bill does not present a case where due process of law has been denied him. He has invoked the law of the land in the course of legal proceedings, which appear to have been conducted according to the rules and principles, established by our jurisprudence, for the protection and enforcement of the rights of citizens of Maine. He has obtained a decree in the probate court of Maine, and in the courts to which appeal was taken. Upon the authorities to which I have called attention, these courts must be held to be competent tribunals to pass upon the subject-matter thus brought before them. In Thompson, Appellant, 116 Me. 473, 102 Atl. 303, Mr. Chief Justice Cornish, in speaking for the Maine court, has said:

"The law of the land has been measured out to the petitioner, and [the Supreme Judicial Court of Maine] have searched in vain for any infringement of his constitutional rights."

Upon examination of the proceedings in the state court, recited in the bill in equity, I am of the opinion that the plaintiff had already received due process of law in the only courts competent to take jurisdiction in the probate of wills.

The bill must be dismissed, for the reason that this court has no power to nullify and prevent the enforcement of a decree of the probate court of Maine admitting a will to probate. Having come to this conclusion, it is unnecessary to consider the further questions raised by the motion.

A decree may be presented dismissing the bill, with costs.

On December 28th, the day of the hearing, a motion was filed by the plaintiff to strike from the records defendant's pending motion, with which motion the court is now dealing. The plaintiff's motion to strike defendant's pending motion from the record is overruled.