## UNITED MINE WORKERS OF AMERICA, DIST. NO. 17, et al. v. CHAFIN et al.

(District Court, S. D. West Virginia.  February 17, 1923.)

1. **Constitutional law ⊂⟹206(1), 209, 251—Fourteenth Amendment does not relate to individual invasion of individual rights.**

   Const. U. S. Amend. 14, nullifies and makes void all state legislation and state action of every kind which impairs the privileges and immunities of the citizens of the United States, or which injures them or deprives of life, liberty, or property without due process of law, or which denies to any of them equal protection of the law, but does not relate to individual invasion of individual rights.

2. **Courts ⊂⟹282(1)'—Federal court held not to have jurisdiction of bill to enjoin interference with organization of labor union.**

   A district federal court did not have jurisdiction of a bill to enjoin a sheriff and deputies from intimidating, threatening, assaulting, and interfering with plaintiffs, who were organizing labor unions, under Const. U. S. Amend. 14, making void all state legislation and state action impairing privileges and immunities of citizens; no law of the state authorizing acts complained of.

3. **Master and servant ⊂⟹339—Persuading workmen to break contract wrongful.**

   One has no right to go on the property of another and persuade persons working there to break their contracts of employment.

4. **Courts ⊂⟹424—Federal District Court has only jurisdiction conferred.**

   A federal District Court is a court of limited jurisdiction, and has no jurisdiction in any case, unless it is conferred on it by the Constitution of the United States or an act of Congress passed in pursuance thereof.

In Equity.  Bill by the United Mine Workers of America, District No. 17, and others, against Don Chafin and others.  On motion to dismiss.  Motion granted.

T. C. Townsend, H. W. Houston, and C. J. Van Fleet, all of Charleston, W. Va., for plaintiffs.

A. M. Belcher, of Charleston, W. Va., and E. L. Greever, of Tazewell, Va., for defendants.

McCLINTIC, District Judge.  This cause was instituted by the above-named plaintiff, and Charles Armstrong and Otto Massey, for the purpose of enjoining the defendant Chafin, his deputies and agents, and the Logan Coal Operators' Association, and the individual coal companies, from intimidating, threatening, or assaulting, or in any way interfering, with the plaintiffs, or any person similarly situated, from doing various things as set out in the bill in this cause.  It is admitted in the bill that all the plaintiffs and all the defendants are citizens of the state of West Virginia.

The purpose of the bill and of the injunction prayed for was to en-

---

⊂⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

join Chafin and the other defendants from interfering with the United Mine Workers in attempting to organize the miners working in the nonunion field of Logan county. The bill has filed with it many exhibits, tending to show that the plaintiffs have in the past been threatened and intimidated when they attempted to organize the miners of that county, working for the various coal operators therein, into locals of the United Mine Workers. Notice was duly given that this motion for a temporary injunction would be made, and the defendants appeared by counsel and moved to dismiss the bill, on the ground that this court did not have jurisdiction, for reasons set out in the written motion.

The plaintiffs claimed that the court had jurisdiction, and based such claim of jurisdiction upon the first section of the Fourteenth Amendment, and, as I understand it, rested their argument and contentions entirely thereon. The section in question is as follows:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

It is claimed by the plaintiffs that the sheriff of Logan county had entered into a conspiracy with the Logan Coal Operators' Association by which the sheriff appointed a large number of deputies, which deputies were confirmed by the county court, and were paid by funds donated by the coal operators. It is also averred that the sheriff and these deputies had done many acts and things, the purpose of which was to prevent representatives of the United Mine Workers, and others similarly situated, from coming into or remaining in Logan county, and that such acts on their part were contrary to the provisions of the Fourteenth Amendment.

By the motion made by the defendants to dismiss the bill, I take it that this is a confession, for the purposes of this case, of the truth of the allegations contained in the bill, and the question here is whether, upon such allegations, this court has jurisdiction to hear and pass upon the questions raised therein. It is plain from the allegations in the bill that the alleged acts of the sheriff and his deputies are not the acts done by them under any law of the state of West Virginia; on the contrary, they are acts done by them as individuals, wholly and entirely outside of the law, and in fact against law.

Under the laws of West Virginia, a sheriff is only authorized to do the things that a statute commands, and the alleged acts complained of here are not only unauthorized by any statute, but in my opinion are strictly forbidden by statute in this state. The sheriff can only arrest upon process, duly issued by a court, or upon seeing criminal offenses committed in his presence.

A state speaks by its legislative, executive, and judicial branches. As stated above, no law passed by the legislative department authorized in any way any such acts as are complained of here. No court commanded or directed any of the acts complained of here. No person in the executive department had any legal authority to direct any of the acts complained of herein to be done. The sheriff had no legal

authority to command any of his deputies to do such things as are alleged in this bill, and testified to in the exhibits filed therewith, and such sheriff himself had no legal authority to do any such acts.

[1, 2] The Fourteenth Amendment has been passed upon by the Supreme Court of the United States in many cases, and by other federal courts in many cases. The principle which, it seems, can be deduced from all the cases is that it applies only when there is state action of a particular character which comes under its prohibition. Individual invasion of individual rights is not the subject-matter of the Fourteenth Amendment. It nullifies and makes void all state legislation and state action of every kind which impairs the privileges and immunities of citizens of the United States, or which injures or deprives them of life, liberty, or property without due process of law, or which denies to any of them the equal protection of the laws.

Undoubtedly there are expressions in some of the adjudicated cases which would seem to hold that, where an individual officer did illegal acts outside of any authority given to him by the statute, the amendment should apply; but, so far as I have been able to find, there is no adjudicated case where the facts justify such an expression. I am cited particularly to the case of Home Telephone & Telegraph Co. v. Los Angeles, 227 U. S. 278, 33 Sup. Ct. 312, 57 L. Ed. 510.

This case was strictly under the proposition that the state had made a law authorizing the city to pass ordinances, and these ordinances passed by the city violated the Fourteenth Amendment. Under these ordinances, it was charged that the telephone company was only permitted to collect such a rate for service as would necessarily confiscate the property of the telephone company. The District Court decided that it did not have jurisdiction, and on appeal to the Supreme Court of the United States the decision of the District Court was reversed, and it was held that "the reach of the Fourteenth Amendment is coextensive with any exercise by a state of power in whatever form exerted." And it was further stated that:

"Under such amendment the federal judicial power can redress the wrong done by the state officer misusing the authority of the state with which he is clothed."

In this case the city authorities of Los Angeles were enjoined from enforcing the ordinances fixing the confiscatory rate of charges.

Our instant case is more like the case of Virginia v. Rives, 100 U. S. 313, 25 L. Ed. 667. That case was a petition for mandamus to compel the District Court for the Western District of Virginia to remand to the state court of Patrick county the cases of two men who had been indicted for murder in that county, and whose cases had been removed to the federal court by order of Judge Rives, and the state of Virginia filed its petition in mandamus in the Supreme Court, praying that Judge Rives be commanded to remand the cases to the state court. It was held therein, that the prohibitions of the Fourteenth Amendment had exclusive reference to state action. Judge Field, in his concurring opinion (100 U. S. page 333, 25 L. Ed. 667), quotes the language of the Fourteenth Amendment, and then continues as follows:

"As the state, in the administration of its government, acts through its executive, legislative, and judicial departments, the inhibition applies to them.

286 F.—61

But the executive and judicial departments only construe and enforce the laws of the state; the inhibition, therefore, is in effect against passing and enforcing any laws which are designed to accomplish the ends forbidden. If an executive or judicial officer exercises power with which he is not invested by law, and does unauthorized acts, the state is not responsible for them. The action of the judicial officer in such a case, where the rights of a citizen under the laws of the United States are disregarded, may be reviewed and corrected or reversed by this court. It cannot be imputed to the state, so as to make it evidence that she in her sovereign or legislative capacity, denies the rights invaded, or refuses to allow their enforcement. It is merely the ordinary case of an erroneous ruling of an inferior tribunal. Nor can the unauthorized action of an executive officer, impinging upon the rights of the citizen, be taken as evidence of her intention or policy so as to charge upon her a denial of such rights."

[3] I am of the opinion that no law of West Virginia authorizes the acts complained of in the bill, and alleged to have been done by the sheriff and his deputies. It is true that parties have no right to go upon the property of another, and persuade some one working there to break contracts; and it is also true that the law of trespass is a part of the law of West Virginia. But if the sheriff or his deputies are guilty of criminal acts, as alleged in the bill, such acts are the subject of proper action in the criminal courts. Other action may be taken in the courts of West Virginia to assert the rights as alleged in the bill.

[4] This is a court of limited jurisdiction, and has no jurisdiction in any case unless it is conferred upon it by the Constitution of the United States, or an act of Congress passed in pursuance thereof. It is a court limited in its powers, because the government of the United States is one limited alone to the powers affirmatively given to it by the Constitution. This is not a case where financial interests are involved, and no money value is placed upon the things claimed or charged.

As I view the case, this court has no jurisdiction, because the acts charged are not done under or pursuant to any law of the state of West Virginia. If committed as charged, they are strictly in defiance of the law of the state of West Virginia. It is not state action, but simply the action of an individual. If some subordinate executive officer, such as the sheriff, refuses or declines to perform his duties under the law of the state, it is no doubt good ground for the removal of such officer, and, if he does acts which are violations of the laws of the state, we know there is a proper way to proceed against him, as against other citizens, with proper penalties prescribed by such laws.

It is not the province of the federal courts, under the Fourteenth Amendment, to see that every citizen shall have accorded to him all the privileges which are legally his, as against the acts of every subordinate state or county officer, who prevents him from exercising such privileges in violation of the law.

In my opinion, such acts are in no sense the act of the state, and are not, in any way, "the state depriving any person of life, liberty, or property, without due process of law; nor is it the state denying to any person within its jurisdiction the equal protection of the laws."