## CONCORD CASUALTY & SURETY CO. v. UNITED STATES.

### No. 172.

Circuit Court of Appeals, Second Circuit.

Feb. 13, 1934.

Fred Flatow, of New York City (J. Sidney Bernstein, of New York City, of counsel), for appellant.

Thomas E. Dewey, U. S. Atty., of New York City, and David Marcus and Earle N. Bishopp, Asst. U. S. Attys., both of Brooklyn, N. Y.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

On an order to show cause, issued against the appellant, supported by an affidavit of an assistant United States attorney for the Southern district of New York, the appellant was directed to show cause why an order should not be entered prohibiting and restraining it from acting as surety "in any and all matters in the United States District Court for the Southern District of New York." The affidavit averred that substitutes for defendants, impersonating them, fraudulently served their short prison terms in sixty instances for violation of the Volstead Law (27 USCA). The appellant and other surety companies had issued bail bonds for their appearance when wanted. In another affidavit submitted under a later date, the same assistant United States attorney affirms that there had been a practice of substitution for defendants, arrested, in serving their sentences for short terms. He states that in twenty-six instances the appellant was the surety of the named defendants, and that, when one of the imposters came before a judge of the District Court, after apprehension, he stated he was asked to act as a substitute in the case by an agent of the appellant, and that the agent said he would pay him for so doing the sum of $10 after he served the term as a liquor law violator. An officer of the appellant in an affidavit, in opposition to this proceeding, stated that the company had no knowledge or information as to the frauds perpetrated upon the court. He described the business routine of the company in writing bonds, its business arrangement with its agents, that when, in one of the cases in which it had issued a bail bond, a defendant was called to appear, it promptly dispatched notice thereof to the particular defendant by mail, telephone, or telegraph, as most convenient, and that it notified its agent who had been instrumental in procuring the bond. This procedure was followed in each of the twenty-six cases referred to in the moving affidavits. As soon as the company learned that imposters had appeared in the place of defendants, it caused an investigation to be made by its agents and spared no expense in endeavoring to bring the true defendants before the court. He said it had received no definite proof that its agents were involved in the alleged frauds, although it made an independent investigation. It suspended the authority of all the agents who wrote the bonds involved in the cases in question. In notices it directed its agents to produce the real defendants in court for the disposition of their cases, and he swears it cooperated with the United States attorney's inquiry to the fullest extent.

No bill of complaint or other process was filed asking for equitable relief of any kind.

On the return day, hearing was had before the single judge issuing the order to show cause. No testimony was taken. After the hearing, the judge received the evidence of a witness who had testified before the grand jury, which is part of this record. His testimony merely described the company's method of carrying on its business and its payments to agents of part of the premises.

The court below was without jurisdiction to enter the order. It was not based upon a bill in equity. It was an attempt to carry on a special disciplinary proceeding. No precedent supports it. If we are to be informed by the opinion rendered below, the nature of the proceeding is to disbar the surety company from carrying on its business as surety in criminal cases similar to a proceeding to discipline an attorney, or it is in the nature of a criminal contempt proceeding, for the suspension granted is referred to as a punishment inflicted upon the appellant. Indeed, the appellee seeks support for the proceeding under rule 4, General Rules of the Southern District of New York, covering disbarment of attorneys. By its very terms, the rule is applicable to members of the bar deserving discipline. The proceeding is not for a criminal contempt. Section 386, title 28 USCA. It could not be unless the appellant was actively and directly connected with the contumacious act.

Nor is there any inherent power in the court to proceed as below. No statute, rule, or implied power can be invoked to support such jurisdiction. The appellant is organized under the laws of New York and has had the approval of the state superintendent of insurance to do business. It has a certificate, issued by the Secretary of the Treasury, authorizing it to issue bonds in federal courts. Its authority to execute bonds and undertakings in judicial proceedings is derived from the federal statute. Section 8, title 6 USCA, requires that it deposit a copy of its charter

with the Secretary of the Treasury, showing its assets and liabilities, and, if he is satisfied with its authority to do business under its charter as prescribed by sections 6 to 13, and has a paid-up capital of not less than $250,000 in cash or its equivalent and is able to keep and perform its contracts, he shall grant authority in writing to such company to do business under sections 6–13.

Appellant complied with this requirement and received authority from the Secretary of the Treasury to write bonds specified in section 6, title 6 USCA. Section 6 provides that "such recognizance, stipulation, bond, or undertaking shall be approved by the * * * court, judge, or officer * * * required to approve or accept the same." Section 9 of title 6 confers authority upon the Secretary of the Treasury to revoke the certificate of authority to do business which he issues under section 8. It provides: "The said Secretary of the Treasury shall have the power, and it shall be his duty, to revoke the authority of any such company to transact any new business under sections 6 to 13 of this title whenever in his judgment such company is not solvent or is conducting its business in violation of sections 6 to 13. He may institute inquiry at any time into the solvency of said company and may require that additional security be given at any time by any principal when he deems such company no longer sufficient security."

The District Court for the Southern District of New York has a rule (rule 28 of General Rules effective July 1, 1931) providing that:

"All surety companies holding certificates of authority from the Secretary of the Treasury as acceptable sureties on federal bonds and which are either incorporated in the States of New York or have appointed process agents for the District, are hereby approved up to the amounts for which they are respectively authorized by the Treasury Department to act on any one bond, as sureties on stipulations for costs and value, undertakings, bail bonds and all other bonds required to be filed in the Court.

"When the amount of bail pending an appeal in criminal causes or habeas corpus proceedings, or after indictment or information in criminal cases has been fixed by a Judge, the Clerk or Deputy Clerk may take such bail bond when the surety thereon is one of the aforesaid approved surety companies. * * * "

The District Courts are of limited jurisdiction conferred by the Constitution and laws of the United States, depending upon the express provisions of the federal statutes. Klein v. Construction Co., 260 U. S. 226, 43 S. Ct. 79, 67 L. Ed. 226, 24 A. L. R. 1077; Mansfield, C. & L. M. R. Co. v. Swan, 111 U. S. 379, 4 S. Ct. 510, 28 L. Ed. 462; Hanford v. Davies, 163 U. S. 273, 16 S. Ct. 1051, 41 L. Ed. 157; United Mine Workers v. Chafin (D. C.) 286 F. 959; Thompson v. Nichols (D. C.) 254 F. 973.

As said in United States v. Hudson, 7 Cranch. 32, 33, 3 L. Ed. 259: "All * * * Courts created by the general Government possess no jurisdiction but what is given them by the power that creates them."

The courts of the United States are all limited in their nature and constitution, and have not the powers inherent in courts existing by prescription or by the common law. Myers v. United States, 272 U. S. 52, 47 S. Ct. 21, 71 L. Ed. 160; Cary v. Curtis, 3 How. 236, 11 L. Ed. 576. The jurisdiction of the District Court is not inherent, but the result of statute. Colgate & Co. v. Procter & Gamble Mfg. Co. (D. C.) 25 F. (2d) 160. Rule 28 of the District Court, approving all surety companies holding certificates of the Secretary of the Treasury, but coincides with the statute of authority. 6 USCA § 6. The rule cannot grant jurisdiction, for a rule cannot abrogate or modify the substantive law. Johnson v. Manhattan Ry. Co., 289 U. S. 479, 53 S. Ct. 721, 77 L. Ed. 1331; Washington-Southern Nav. Co. v. Baltimore & P. S. Co., 263 U. S. 629, 44 S. Ct. 220, 68 L. Ed. 480; Woodbury v. Jergens Co., 61 F. (2d) 736 (C. C. A. 2).

There is no inherent or vested power in the court to proceed in a special proceeding to revoke the authority by way of a disbarment. It was the duty of the court below to raise the point of jurisdiction at the outset. Colgate & Co. v. Procter & Gamble Mfg. Co. (D. C.) 25 F. (2d) 160; Cunard S. S. Co. v. Smith, 255 F. 846 (C. C. A. 2).

Congress placed in the administrative branch of the government, the Secretary of the Treasury, the power to designate and the power to revoke the authority of sureties. 6 USCA §§ 6, 9. It has not been granted to the courts. A special proceeding to disbar attorneys is authorized because members of the bar are officers of the courts subject to discipline, and the courts have provided rules regulatory thereof. Surety companies derive their authority from charter powers and administrative officers of the federal government. Their supervision, conduct, and re-

sponsibility are left in the charge of the administrative officers.

■■ The court is not without protection if the surety company is deemed a poor moral or unsafe risk. If the surety company should so conduct its business as to lose the confidence of the court or a judge thereof, the judge to whom an undertaking is submitted in any case for approval could refuse to approve it. The court or the judge may direct the clerk or clerks to do likewise in such instance, under the provisions of title 6 USCA § 6. The District Court might by rule refuse to accept bonds of any named surety company. Like any other financial risk in giving an undertaking or guaranty, a moral risk as well as the material risk is involved. It is the personal responsibility—the presence of the prisoner—that a bail bond requires. When a defendant is called upon to pay his obligation to society, it is not the sum of the bail bond that society asks for, but rather the presence of the defendant for imprisonment. The court's judicial act of approval of a bond is not mandatory under section 6, but the statute calls for the exercise of a wise judicial discretion.

There was no jurisdiction for this special proceeding.

Order reversed.

SWAN, Circuit Judge (concurring).

I agree that the order must be reversed. But I wish to make it perfectly plain that in my opinion the District Judges have full power to refuse to accept any bonds written by this appellant until they are satisfied that its business will be so conducted as to preclude a repetition of the evils which led to this motion for an injunction. If the court lacks confidence in the surety's purpose or ability to secure the appearance of a bailed defendant, it may refuse its approval of a bond even though the financial standing of the bail is beyond question. United States v. Lee, 170 F. 613 (D. C. S. D. Ohio). The statute (6 USCA) does not, in my opinion, prevent the court from refusing to accept a corporate surety which has obtained a certificate of authority under section 8 thereof. Consequently, if the appellant's business was so conducted as to forfeit confidence, as appears to be the case, the District Judges might, by an amendment of rule 28, exclude it from the list of companies therein approved. But the procedure attempted to be employed in making the order appealed from was beyond the court's jurisdiction.