PAUL ROSENBLUM, Plaintiff, *v.* RUTH ROSENBLUM, Defendant.

Supreme Court, Special Term, New York County, June 3, 1943.

*Blecher & Fellner* for plaintiff.

HAMMER, J. In an action for absolute divorce by a husband against his wife, the Supreme Court has been requested by plaintiff to make an order for publication of the summons under Civil Practice Act, section 232, subdivision 5, to dispense with mailing upon the ground that defendant is in occupied France and mail could not reach her, and to provide in lieu thereof that the summons, complaint and order, and notice under rule 52 of the Rules of Civil Practice, be mailed to the Secretary of the Treasury and the Alien Property Custodian (Rules Civ. Prac. rule 50).

It has been held in our State that in an action for divorce or separation, service by publication pursuant to order gives our courts full jurisdiction to fix the marital status or relations of the plaintiff. (*Matthews* v. *Matthews*, 247 N. Y. 32; *Geary* v. *Geary*, 272 N. Y. 390.) In the latter case it was said (pp. 398–399): " The governmental powers of the State of New York do not extend beyond its territorial limits and the jurisdiction of the courts of the State is confined to property and persons subject to the power of the State. Without service of process within the State or voluntary appearance in court or submission to its jurisdiction, no court of a State acquires jurisdiction of the person of a non-resident defendant or can grant a personal judgment enforceable by execution against his person or property. Though a State has power to provide that the property of a non-resident within the State may be applied to satisfy the obligation of a non-resident, it may do so only where the action is directed against property which the court has taken into its custody or possession and where the defendant who owns the property has actual or constructive notice of the action and has opportunity to defend. (*Pennoyer* v. *Neff*, 95 U. S. 714.)

" It has been said that ' if possession of the *res* is the foundation of jurisdiction, that possession must be acquired when jurisdiction is assumed.' (*Helme* v. *Buckelew*, 229 N. Y. 363, 371.) To the extent that possession of specific property constituting the *res* is the foundation of jurisdiction and *is* depend-

·ent upon prior seizure of the property, it may well be argued that the property must be seized when jurisdiction of the action is *first* assumed, so that the defendant may have notice and opportunity to be heard at every step leading to the disposition of his property. That is the defendant's contention in this case. It must fail where possession of specific *res is* not the foundation of jurisdiction.

" The *res* which is the subject-matter of ' actions which are substantially *in rem* ' is not in all cases tangible personal property which can be seized and the foundation of jurisdiction of the court is not always physical possession of the *res*. In matrimonial actions the ' *res* ' is the marital status of a resident of the State, and to the extent that the purpose of the action is to alter or affect that matrimonial status, the action is a ' proceeding substantially *in rem* ' where ' substituted service by publication or in any other authorized form ' is sufficient notice to answer the requirement of ' due process ' as formulated in *Pennoyer* v. *Neff* (*supra*). Thus even before seizure of any property the courts of New York might assume jurisdiction of the action for separation though the jurisdiction so assumed would not extend to the inclusion of an award of alimony in the judgment of separation. (*Rigney* v. *Rigney*, 127 N. Y. 408.)

" A matrimonial action often has a dual aspect. In one aspect it is substantially a proceeding *in rem*, since its purpose is to alter the matrimonial status of the parties; in the other aspect it is a proceeding *in personam*, since its purpose is to compel the defendant to perform his obligation to furnish his wife and children with support. A State has power to provide that the property within the State of a non-resident defendant may be seized and applied to satisfy the defendant's marital obligation to support his wife, just as it may be seized and applied in satisfaction of any other obligation. (*Pennington* v. *Fourth Nat. Bank*, 243 U. S. 269, 272.) "

In *Matthews* v. *Matthews* (247 N. Y. 32, 34–35, *supra*) it was said: " In actions for divorce or separation brought by one of our citizens against a non-resident service by publication does, so far as we are concerned, give our courts full jurisdiction to fix the marital status or relations of the plaintiff. We cannot, however, thus give a personal judgment that will bind the defendant except in so far as he has property in this State of which we may take possession. And it is not enough that at the time judgment is rendered he in fact has property within our jurisdiction. The right to dispose of it rests upon a prior seizure. Only so does the defendant receive notice that he has

rights which should be protected. It must, therefore, appear before a judgment is entered purporting to deal with a non-resident's property, that by attachment, by injunction, by sequestration, in some manner, the court has laid hands upon his property within the State. (*Helme* v. *Buckelew,* 229 N. Y. 363, 371; *Pennoyer* v. *Neff,* 95 U. S. 714.) * * *

" This is equally true in an action for separation as in an action for a divorce. All that the court may do is to fix the marital relations of one of our citizens. It may decree the divorce or the separation; it may fix the custody of children, at least if they are within the State; but it may not dispose of a non-resident's property which is not in its possession. The relations of the parties and the right to alimony and counsel fee are distinct. The right to decree as to the one does not involve the right to decree as to the other. (*McGuinness* v. *McGuinness,* 72 N. J. Eq. 381.) "

Due process requires that a person be not deprived of life, liberty or property without an opportunity to be heard in defense of his right. The rule is founded on principles of natural justice. (*Stuart* v. *Palmer,* 74 N. Y. 183.) It was interwoven in common law and found expression in Magna Charta (12 C. J., Constitutional Law, § 957, p. 1193, notes 76, 77). The Constitution of the United States, Fifth Amendment, provides that " No person shall * * * be deprived of life, liberty, or property, without due process of law ". Although this restriction applies to the Federal Government (*Nebbia* v. *New York,* 291 U. S. 502, affg. *People* v. *Nebbia,* 262 N. Y. 259), the Fourteenth Amendment, " nor shall any State deprive any person of life, liberty, or property, without due process of law ", is a direct limitation on the powers of the States. (*Nebbia* v. *New York, supra; Roseman* v. *Fidelity & Deposit Co. of Maryland,* 154 Misc. 320; *People* v. *Willi,* 109 Misc. 79, affd. 194 App. Div. 946.) Similar provisions, identical in import and purpose, are in the New York State Constitution. (See *People* v. *Willi,* supra.) The guarantee does not necessarily apply to acts of individuals affecting other individuals (*Davidow* v. *Lachman Bros. Investment Co.,* 76 F. 2d 186; *United Mine Workers of America, Dist. No. 17* v. *Chafin,* 286 F. 959), but the underlying principle is to secure equal and impartial justice to all (*United States* v. *Yount,* 267 F. 861).

Life and liberty, within the meaning of the guarantee, include all personal rights and their enjoyment, embracing the use and enjoyment of the faculties, acquiring useful knowledge, the right to marry, establish a home and bring up children, free-

dom of worship, conscience, contract, occupation, speech, assembly and press. (*Grosjean* v. *American Press Co.,* 297 U. S. 233; *Meyer* v. *Nebraska,* 262 U. S. 390, revg. 107 Neb. 657.) While a statute or rule of law in some instances may work a hardship and not violate due process (*People ex rel. Berger* v. *Warden of Workhouse,* 176 App. Div. 602), when enforcement will clearly result in discrimination against numerous individuals of a class, it would seem that courts should be moved to adopt appropriate measures for their protection. In the procedural aspect, the constitutional provision guarantees to every person his day in court and reasonable opportunity to be heard or defend. (*Truax* v. *Corrigan,* 257 U. S. 312, revg. 20 Ariz. 7; *City of Buffalo* v. *Hawks,* 226 App. Div. 480, affd. 251 N. Y. 588.) It requires orderly proceedings in a competent tribunal, in accordance with generally established rules not violative of fundamental rights. Right to a trial according to generally accepted uniform and regular forms of law is secured. (*Colon* v. *Lisk,* 153 N. Y. 188.)

It is urged in numerous other similar applications that the defendant is within a country with which the United States is at war or, as here, in a place — i.e., occupied France — with which the United States does not maintain postal communications, and that the order should dispense with the mailing of any papers to such defendant, and in lieu thereof that such papers be mailed to the Secretary of the Treasury (Rules Civ. Prac. rule 50) and the Alien Property Custodian (as formerly provided under Rules Civ. Prac. rule 50█ and under Trading With the Enemy Act, as amended [U. S. Code, tit. 50, Appendix, § 1 *et. seq.*], Executive Order No. 9095, as amended [issued March 11, 1942, as amd. by Executive Order No. 9193, issued July 6, 1942, 7 Federal Register, pp. 1971, 5205], and Alien Property Custodian General Order No. 6 [issued Aug. 8, 1942, 7 Federal Register, p. 6199]), directed to them at Washington, D. C. In some instances it is asked that mailing be dispensed with because the defendant is in a country contiguous to such occupied or occupying country, and such mailing might be injurious to such defendant. The above are in accordance with the provisions of rule 50 of the Rules of Civil Practice.

This action is for an absolute divorce. Some are for accountings by trustees, and others for judgments of mortgage foreclosure and varied relief, both *in rem* and *in personam.* The State is deeply concerned with the marriage status and over

it exercises a jealous and exclusive dominion. (*Livingston* v. *Livingston*, 173 N. Y. 377; *Wade* v. *Kalbfleisch*, 58 N. Y. 282.) In the courts trustees are held to strict account for the property entrusted to them, their acts in relation to the trust property, and the interests of the beneficiaries, and all infants and incompetents are wards of the court. The Supreme Court under its chancery power has plenary jurisdiction in respect of appointments, resignations, removals, substitutions and accountings by trustees. (*New York Security Co.* v. *Saratoga Gas Co.*, 88 Hun 569, affd. on opinion below 157 N. Y. 689; *Widmayer* v. *Widmayer*, 76 Hun 251; *Jones* v. *Jones*, 8 Misc. 660.) In mortgage foreclosures the title to real estate is involved, and in various other actions defendants are to be deprived of property, and reputation and honor rights as precious as liberty itself are at stake.

It is obvious that under the present state of war the notice of publication, even where copies are mailed to defendants in occupied countries, as well as where mailing is dispensed with, will not be received by such defendants. Mailing to the Secretary of the Treasury and the Alien Property Custodian where the action does not involve an alien defendant's property subject to seizure by the United States Government, proper as that procedure is in the state of war, clearly furnishes no notice to such defendants of the pending lawsuits and the remedy sought by judgment. Under the circumstances there is no opportunity permitted such defendants to defend themselves, such as would be provided by the courts were the defendants infants or incompetents, or by reason of habitual drunkenness or for any other reason mentally incapable to protect their rights, although not judicially declared to be incompetent (Rules Civ. Prac. rule 44). But there can be no question that the defendant here, and those in the other types of action referred to, are utterly incapable, because of their plight, of defending themselves.

Here not only are the defendant's marital status and right to support and to property involved, but even her good name, her standing and reputation as a woman, her wifely honor, virtue, happiness and family rights are at stake. She may be all the plaintiff asserts she is, but this court will not, unless compelled by higher authority, deprive her of the right and opportunity to defend herself against her husband's charge. In addition defendant's default, occasioned through lack of notice, may, and probably will, give rise — if and when on becoming aware of what has occurred and upon the war's ending, she will be enabled to act — to inability to undo any injustice which has happened

to the intervening rights or equities of a possible new wife, family and children. Also it must be noted that the supporting affidavit here by plaintiff's attorney is hearsay, and, as neither spouse can be a witness to prove an adultery, the complaint adds nothing of value. A true administration of justice cannot be had in such situations and great injustice will probably result if the court be tolerant thereof.

Under the circumstances, two alternatives are present. The court, on the one hand, may decline to grant any orders of publication in such cases as are mentioned above for the duration of the war and until reasonably normal mailing communication is reestablished. On the other hand, the court under the compulsion of the provisions of the statute and the rules of practice may feel required to issue the order, provide for service on the Secretary of the Treasury and the Alien Property Custodian, and under its inherent powers and interest in helpless litigants, obviously in the position of being incapable of any defense, take measures deemed appropriate for the protection of the defendants to be served by such " publication ". This in my opinion should be done by also appointing a person designated by the court to receive a copy of the summons, complaint and papers upon the application for publication on behalf of the defendant, examine into the circumstances of the cause to enable such person to protect properly the rights of such defendant at any stage of the action unless and until such defendant may personally appear or duly give instructions to the contrary, or until or unless a guardian *ad litem* or special guardian shall be appointed. The person so designated and the guardian if and when appointed should be entitled to such compensation for his services as the court may deem reasonable. This in my opinion is the adequate and appropriate procedure under which the defendant here and the others alluded to may be protected under their positions of helplessness and incapacity to defend themselves or have their day in court.

Granting of the application for the order of publication will be stayed unless and until plaintiff avails himself of the alternative procedure given above. In such event, submit order providing for the required designation of a person to receive service.