THE HOME GROUP, INC., AS AGENT UNDER THE PROVISIONS OF TREASURY REGULATION SECTION 1.1502-77(D) FOR CITY INVESTING CO. AND THE CONSOLIDATED GROUP OF WHICH CITY INVESTING COM. WAS THE COMMON PARENT, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 17739-82.          Filed May 10, 1989.

*William L. Goldman, John S. Breckinridge, Jr.,* and *F. Brook Voght,* for the petitioner.

*Daniel A. Guy, Jr.,* and *Maureen Nelson,* for the respondent.

## OPINION

GERBER, *Judge:* This matter is before the Court on respondent's motion to set aside our approval of petitioner's appeal bond. On January 15, 1987, we held that Home Insurance Co. (sometimes referred to as Home) and Home Indemnity Co. (Indemnity), members of the consolidated group of corporations of which City Investing Co. was the common parent, were not entitled to deductions for insurance sales commissions associated with deferred and unearned insurance premiums.[1] *City Investing Co. v. Commissioner,* T.C. Memo. 1987-36. In a second opinion we considered disputes arising from differences in the parties' computation of deficiencies under Rule 155.[2] *The Home Group, Inc. v. Commissioner,* 91 T.C. 265 (1988). We redetermined the affiliated group's income tax deficiency to be approximately $20 million. In the process of appealing these opinions to the U.S. Court of Appeals for the Second Circuit, petitioner, as agent for Home, Indemnity, and the remaining members of the consolidated group, filed an

---

[1]The commissions applicable to deferred premium installments for the taxable years in issue are as follows:

| Year | Home | Indemnity |
|------|------|-----------|
| 1968 | $35,091,343.08 | $3,899,038.12 |
| 1969 | 37,402,575.33 | 4,155,841.70 |
| 1970 | 35,623,957.85 | 3,958,217.54 |

[2]All Rule references are to the Tax Court Rules of Practice and Procedure. Unless otherwise noted, all section references are to the Internal Revenue Code of 1986.

appeal bond on November 16, 1988, in the amount of $41,949,712[3] for purposes of staying assessment and collection of the tax deficiency we redetermined. Sec. 7485(a). The bond identifies Home Insurance Co., the same affiliated subsidiary whose deductions are at issue in this case, as the surety. We initially accepted the bond in a routine. fashion because Home is an approved surety.

Respondent thereafter filed a motion to have us set aside our approval of petitioner's appeal bond. He argued that Home is incompetent to serve as surety on its own appeal bond under section 7485(a) since it is a member of the consolidated group liable for the tax deficiency.

As a member of the affiliated group of corporations, Home Insurance Co. is severally liable for the consolidated tax liability of the entire group. Sec. 1.1502-6(a), Income Tax Regs. Therefore, such total consolidated tax liability, including deficiencies, may be collected from Home notwithstanding the allocation of tax liability or other intercompany agreements. Sec. 1.1502-6(c), Income Tax Regs.; *Mississippi River & Bonne Terre Ry. v. Commissioner*, 39 B.T.A. 995 (1939); *Turnbull, Inc. v. Commissioner*, 373 F.2d 91 (5th Cir. 1967), cert. denied 389 U.S. 842 (1967); see also H. Lerner, R. Antes, R. Rosen, and B. Finkelstein, 1 Federal Income Taxation of Corporations Filing Consolidated Returns, sec. 4.05 (13th ed. 1988). Hence, the issue in this case is whether Home is an acceptable surety for purposes of its own appeal.

Section 7485(a)(1) provides, in part, that in order to stay the assessment and collection of any portion of a deficiency determined by this Court while our decision is pending on appeal, the taxpayer must file "with the Tax Court a bond in a sum fixed by the Tax Court * * * and with surety approved by the Tax Court." See also Rule 192.

Generally, to be an acceptable surety a corporation must satisfy the requirements of 31 U.S.C. section 9304 (1982), a statute of general applicability governing sureties qualified to issue Federal bonds.[4] *Yoke v. Mazzello*, 202 F.2d 508, 510-511 (4th Cir. 1953). It provides, in pertinent part, that

---

[3]Customarily, the amount of the appeal bond is double the amount of the portion of the deficiency for which the notice of appeal is filed.

[4]However, we do not consider here whether a surety *must*, under all circumstances, satisfy 31 U.S.C. sec. 9304 (1982) to be acceptable for sec. 7485 purposes.

"When a law of the United States Government [in this case, section 7485(a)(1)] requires or permits a person to give a surety bond through a surety, the person satisfies the law if the surety bond is provided for the person by a corporation" that (i) is incorporated under the laws of the United States or a State, the District of Columbia, or a territory or possession of the United States, (ii) may under those laws guarantee bonds and undertakings in judicial proceedings, and (iii) complies with 31 U.S.C. sections 9305 and 9306.[5] Pursuant to 31 U.S.C. section 9305(a), the surety must file a copy of its articles of incorporation and a sworn statement of assets and liabilities with the Secretary of the Treasury. If the Secretary is satisfied that the surety has the proper charter authority, paid-up capital of at least $250,000, and the ability to carry out its contracts, then the surety is granted written authorization to provide surety bonds under 31 U.S.C. section 9304 and, in turn, section 7485(a)(1). 31 U.S.C. sec. 9305(b).

Once authorized by the Secretary, the surety may write and issue bonds pursuant to section 9304, 31 U.S.C., and section 7485(a)(1). However, the surety has a continuous obligation to file sworn quarterly financial statements with the Secretary. 31 U.S.C. sec. 9305(c). In addition, Title 31 gives the Secretary continuing oversight authority over the surety by (i) directing the Secretary to revoke the authority of a surety corporation to do new business if he decides the corporation is insolvent or is in violation of 31 U.S.C. sections 9304, 9305, or 9306, and (ii) allowing the Secretary to investigate the solvency of a surety corporation at any time. 31 U.S.C. sec. 9305(d). The Secretary is also given the authority to require additional security from the person required to provide a surety bond if the Secretary decides that a surety corporation no longer is sufficient security. 31 U.S.C. sec. 9305(d)(3). The responsibility and authority given to the Secretary regarding sureties is set forth in more detail in the regulations. See 31 C.F.R. sec. 223 (1982).

The statutory framework governing the continuous authorization of corporate sureties, and the explicit provisions for

---

[5] Sec. 9306 of 31 U.S.C. imposes certain requirements that must be satisfied by a surety acting outside the area of its incorporation and place of business. There is no dispute between the parties regarding Home's compliance with this statute.

revoking the right to issue Federal surety bonds, reflect congressional intention that these functions rest with the Secretary of the Treasury. *American Druggists Ins. Co. v. Bogart,* 707 F.2d 1229, 1232 (11th Cir. 1983). In its discussion regarding the predecessor to Title 31, the Second Circuit, in *Concord Casualty & Surety Co. v. United States,* 69 F.2d 78, 80-81 (2d Cir. 1934), recognized:

> Congress placed in the administrative branch of the government, [in] the Secretary of the Treasury, the power to designate and the power to revoke the authority of sureties. * * * It has not been granted to the courts. * * * Surety companies derive their authority from charter powers and administrative officers of the federal government. Their supervision, conduct, and responsibility are left in the charge of the administrative officers.

With the above described statutory framework as a backdrop, petitioner contends that because Home Insurance Co. has satisfied the prerequisites of section 9304, it is an acceptable surety in this case regardless of the fact that as the taxpayer it is already liable for the tax deficiency at issue. Particularly, petitioner relies upon 31 C.F.R. section 223.16, which provides that the "Selection of a particular qualified company from among all companies holding certificates of authority [issued by the Secretary] is discretionary with the principal required to furnish bond." Petitioner also contends there is no authority specifically excluding a surety whose tax liability is at issue from posting a bond for its own appeal. Respondent contends that the bond posted does not provide proper or adequate security. For the reasons discussed below, we agree with respondent.

Section 9304(b), 31 U.S.C., generally, and section 7485(a)(1), specifically, give the Tax Court discretion over whether to approve a particular surety bond or surety. Section 9304(b), 31 U.S.C., provides that "Each surety bond shall be approved by the official of the Government [here the Tax Court] required to approve or accept the bond." As quoted above, section 7485(a)(1) provides that a bond for appealing a Tax Court decision must be provided by a "surety approved by the Tax Court." These statutes implicitly recognize our discretionary authority to protect the United States' ability to collect a tax deficiency we have redetermined. The Secretary's approval of a surety does not

foreclose us from exercising our discretion to approve only those bonds and sureties which we feel confident will insure that deficiencies as we have redetermined and which have been affirmed or modified by a reviewing court will be paid. See *Adolf Coors Co. v. Commissioner*, 62 T.C. 300, 302 (1974); *Concord Casualty & Surety Co. v. United States*, *supra* at 81; *American Druggists Ins. Co. v. Bogart*, *supra* at 1233-1234.

The purpose of a section 7485 appeal bond is to assure the United States that any taxes ultimately owed by a taxpayer will be paid regardless of any changed financial circumstances occurring to the taxpayer during the appeal process. *Adolph Coors Co. v. Commissioner*, *supra* at 302. Accordingly, this Court may refuse to accept a surety or a bond proffered by a surety if it has reason to doubt the sufficiency of the bond's added security in the final collection of the tax deficiency.[6] *Adolph Coors Co. v. Commissioner*, *supra* at 303. We may exercise our discretion to insure that our decision in a particular case is not rendered in vain. Cf. *National Union of Marine Cooks and Stewards v. Arnold*, 348 U.S. 37, 44-45 (1954).

The determination we must now make is whether a taxpayer/surety, accepted by the Secretary of the Treasury, can proffer its own bond for purposes of appealing an adverse decision rendered by this Court. Whether such a bond provides respondent with proper and adequate security is an issue of first impression.

Petitioner contends that its bond fully protects respondent's interests with respect to the collection of the redetermined deficiency, and any argument to the contrary "ignores the reality of the situation." Its focus is on the fact that, as an insurance company, Home is highly regulated by State and Federal authorities and, as a result, "it is highly unlikely that Home's financial condition[7]

---

[6]Our holding, that we have the ability to refuse a surety or an appeal bond, is not intended to denote or imply that the Secretary's authority [to require security from a taxpayer in addition to a bond] under 31 U.S.C. sec. 9305(d)(3) is in any way modified or diluted.

[7]Petitioner also implies that because the book value of the assets of its affiliated group exceeds $13 billion, respondent is not being exposed to any unnecessary risks if Home acts as surety. This point of view does not address the issue. The test in determining whether a bond is proper is neither the extent of the taxpayer's present wealth nor how faint the probability is that the taxpayer's financial condition will seriously deteriorate during the appeal process. Moreover, in determining whether an appeal bond provides sufficient security, we will not play the role of fortune-teller attempting to predict a taxpayer's financial future.

would be permitted to change sufficiently so as to render Home unable to satisfy its bond obligations." Petitioner's analysis misses the point. We do not question Home's quantitative ability to pay its obligations or its quality as a surety. The relevant inquiry here is whether the proffered bond adequately secures the payment of the taxpayer's tax liability even if the taxpayer is later unable to personally satisfy the obligation. Thus, the question we must ask is if, for whatever reason, Home as the taxpayer is financially unable to satisfy its obligation of paying the tax deficiency, will Home be capable of satisfying its parallel obligation under the bond? It is this very contingency which section 7485 is designed to address. When the issue is properly stated, the answer is clearly apparent. Because both obligations are so intertwined and interdependent in a case where a taxpayer liable to pay the tax deficiency guarantees its own performance, the guarantee is artificial. If the taxpayer/surety is unable to satisfy its tax obligation, we cannot see how it will be able to satisfy the identical obligation under the bond. The reality of such a situation is that respondent is left without the security that section 7485 was intended to provide, an appeal bond that is sufficient in both form and substance.

Section 7485(a)(1) balances two interests: a taxpayer's interest in being able to appeal an adverse decision of this Court without being subjected to any resulting collection activity until his or her appeal is heard; and the public interest of protecting the public fisc from the possibility that tax deficiencies will become uncollectible during the appeal process. As a result, the security provided respondent under section 7485(a)(1) in return for collection abstinence is recourse against both the taxpayer and a surety for the collection of the finally determined tax deficiency. For that reason, section 7485(a)(1) inherently requires that the surety be some party other than the appellant/taxpayer in the case. Otherwise, a bond proffered by a surety/taxpayer provides security to respondent that is wholly illusory. The bond that results from this relationship is nothing more than an additional unsecured promise by the taxpayer to

We also note that the savings and loan industry is also highly regulated; we are also mindful of its present financial crises.

pay any finally determined deficiency. By enacting section 7485, Congress believed such a promise by a taxpayer was not sufficient security. This conforms with the general purpose of an appeal bond of furnishing security to the appellee which is in addition to the personal responsibility of the appellant. Cf. *Redding & Co. v. Russwine Construction Corp.,* 417 F.2d 721, 727 (D.C. Cir. 1969); *Fidelity & Deposit Co. of Maryland v. Davis,* 127 F.2d 780, 782 (4th Cir. 1942); *Universal Automobile Insurance Co. v. Culberson,* 51 S.W.2d 1071, 1072 (Tex. Civ. App. 1932) ("The sole purpose of requiring an appeal or supersedeas bond must therefore necessarily be to furnish security to the appellee in addition to the personal responsibility of the appellant."); *Aetna Insurance Co. v. Robertson,* 127 Miss. 440, 90 So. 120, 122 (1921) ("The law requiring security by bond for appeals with supersedeas rests upon the just principle that the successful litigant shall be saved harmless from loss, and secured in the fruits of his victory."). Thus, the ability of a surety to pay the deficiency should not be dependent on the financial status of the taxpayer—or it is the taxpayer's default which forces the United States to expect payment from the surety. Therefore, the surety providing an appeal bond must be an entity which, in addition to the taxpayer, is financially responsible for any deficiency.[8]

Analogously, several State courts have precluded an appellant from acting as a surety on its own appeal bond. See, e.g., *Aetna Insurance Co. v. Robertson, supra; Ellenville Nat. Bank v. Nat Kagan Meat & Poultry, Inc.,* 84 Misc. 2d 815, 377 N.Y.S. 2d 956 (Sup. Ct. 1976); *Universal Automobile Insurance Co. v. Culberson, supra;* see also *Ford Motor Credit Co. v. Machias Ford, Mercury, Inc.,* 509 A.2d 658, 659 (Me. 1986); *In re Appraisal of School Land Lease No. 77255,* 179 Neb. 524, 138 N.W.2d 839, 841 (1965); *Oldenkamp v. Incorporated Town of Hull,* 249 Iowa 471, 87 N.W.2d 444, 445 (1958); *Williams v. J.E. Walton & Son,* 202 Miss. 641, 32 So. 2d 131, 132 (1947); *Chambers v. Wilson,* 67 S.D. 125, 289 N.W. 588 (1940); *Harvely v. Daly,* 112 Ga. 822, 38 S.E. 41 (1901). The rationale supporting these

---

[8]We do not address here the situation where a parent and subsidiary are not a part of an affiliated group and are not jointly and severally liable for the tax liability.

holdings flow from the basic elements of a suretyship and the purpose for requiring an appeal bond.

"Suretyship" is defined in section 82 of the Restatement, Security (1941), as—

the relation which exists where one person has undertaken an obligation and *another person* is also under an obligation or other duty to the obligee, who is entitled to but one performance, and as between the two who are bound, one rather than the other should perform. [Emphasis added.]

See also *In re Yale Express System, Inc.,* 362 F.2d 111, 114 (2d Cir. 1966). Every suretyship involves three distinct parties: (i) The principal, the one whose debt or default is the subject of the transaction; (ii) the creditor, the one to whom the debt or obligation runs; and (iii) the surety, the one who agrees that the debt or obligation running from the principal to the creditor shall be performed, and who undertakes on his own part to perform if the principal does not. See J. Elder, Law of Suretyship, sec. 1.4 (5th ed. 1951). See also Restatement, Security, sec. 82, comments a-d (1941). Therefore, in order to give meaning to the obligation assumed by a surety, a principal is barred from acting as its own surety.

Although petitioner argues that our holding is inequitable because it must incur the cost of posting a bond from an unrelated surety, petitioner is not being required to do anything more than any other taxpayer would to stay assessment and collection of the tax deficiency.

Accordingly, we hold that the proffered bond is not sufficient security and Home Insurance Co. is not an acceptable surety under the circumstances of this case.

To reflect the foregoing,

*An appropriate order will be issued.*

Reviewed by the Court.

NIMS, CHABOT, PARKER, KÖRNER, HAMBLEN, COHEN, SWIFT, JACOBS, WRIGHT, PARR, WILLIAMS, WELLS, RUWE, WHALEN, and COLVIN, *JJ.,* agree with this opinion.